Robert W. BECHOLD,
Plaintiff-Appellant,

v.

IGW SYSTEMS, INC.,
Defendant-Appellee.

No. 86-2030.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 16, 1987.
Decided May 4, 1987.

Raymond J. Hafsten, Jr., Hafsten & Hopper, Indianapolis, Ind., for plaintiff-appellant.

Gregory J. Utken, Baker & Daniels, Indianapolis, Ind., for defendant-appellee.

Before BAUER, Chief Judge, CUDAHY and EASTERBROOK, Circuit Judges.

BAUER, Chief Judge.

Robert Bechold was employed as a tool designer by IGW Systems, Inc. ("IGW"). He alleges that he was fired in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623. The bench trial below resulted in judgment for the defendant. For the reasons which follow, we affirm.

## I.

IGW manufactures precision machine gears and housings for the aircraft industry. Their tool engineering department employed three designers: Robert Bechold, Wayne Orlopp and Marc Lovell. The department designed both jig and fixture tools and perishable tools.[1] Bechold, the plaintiff, was a skilled jig and fixture designer with over 20 years of design experience. We will assume for the purposes of this opinion, that Bechold also had training in designing perishable, or cutting tools. Orlopp was primarily responsible for designing perishable tools. Lovell was in engineering school during the period in question and had been trained by both Bechold and Orlopp in their respective specialties.

Beginning in the late 1970's, IGW began to experience net losses and became dependent on its principal buyer, Sikorsky Aircraft/Helicopter. As the business from Sikorsky began to decline as well, IGW instituted a capital improvement program

---

1. A jig or fixture tool holds parts on machines during the manufacturing process. Jigs and fixtures are reusable and therefore generally only need to be designed at the beginning of jobs. Perishable tools are either weakened or worn out by use and therefore must be continuously redesigned and reproduced.

to attract new business and increase efficiency. By 1982 however, business was still poor and IGW began to layoff both hourly-rated and salaried employees.

Robert Black was hired in 1982 as vice president of engineering and made the selections as to which salaried employees would be laid off in the engineering department. He fired both Bechold (age 61) and Orlopp (age 58) and retained only Lovell (age 23) as a tool designer. Black testified that just prior to hearing of the need for reductions-in-force, he had decided to bring new people into the engineering department to revitalize it. Once it was clear that layoffs were inevitable, Black set about to accomplish both ends at once—to streamline the department while restructuring it. He decided to contract-out all jig and fixture work and use the design department only to design and draft new perishable tools once the old ones became worn.

After conferring with various people, Black decided to dismiss Bechold, the skilled jig and fixture designer, since this work would no longer be handled in-house. Black believed that Bechold had no recent experience in designing perishable tools. Of the two designers remaining, Black decided to retain Lovell, who was merely a draftsman, instead of Orlopp, because Lovell could do the necessary design work and was also responsible for a good deal of the clerical work required. In addition, Black testified that he was not impressed with Orlopp's skills. Bechold brought suit in district court after exhausting his administrative remedies with the EEOC as required by 29 U.S.C. § 626(d).

## II.

■ ADEA prohibits employers from discriminating against employees on the basis of advanced age. 29 U.S.C. § 623. To show a violation of ADEA, a plaintiff must ultimately show that age was a determining factor of discharge. *La Montagne v. American Convenience Products, Inc.*, 750 F.2d 1405, 1409 (7th Cir.1984). Since it is often difficult to show discriminatory intent, this burden can be met by presenting either direct or indirect evidence of discrimination. *La Montagne*, 750 F.2d at 1409. When the plaintiff proves the case indirectly, the court will employ the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (made applicable to cases arising under ADEA in *Tice v. Lampert Yards, Inc.*, 761 F.2d 1210, 1212 (7th Cir.1985)). Since Bechold complained that he was adversely affected by the employer's decision to reduce its force, he must have shown the following elements to establish a *prima facie* case of discrimination:

(1) that he was in the protected age group;

(2) that he was adversely affected;

(3) that he was qualified to assume another position; and

(4) that there is some evidence from which a factfinder might reasonably conclude that the employer intended to discriminate.

*Matthews v. Allis-Chalmers*, 769 F.2d 1215, 1217 (7th Cir.1985); *Williams v. General Motors Corp.*, 656 F.2d 120, 129 (5th Cir.1981). Having met this burden, the burden of production then shifted to the employer to show a legitimate, non-discriminatory reason for discharge. The proffered reason for discharging Bechold was that Black had decided that the design department would no longer need a skilled jig and fixture designer and Black believed that Bechold did not have recent experience in perishable tool design.

■ Bechold argues initially that Black's mere belief that Bechold was unqualified will not suffice as a legitimate reason for discharge where that belief is shown to be erroneous. Bechold argues that he was, in fact, highly skilled in perishable tool design and that reasonable inquiry on Black's part would have divulged this information. Bechold would have us read a requirement into the law that a legitimate, non-discriminatory reason must be more than "mere belief." This argument ignores the purpose of ADEA. If Black erred in discharging Bechold, that would not prove that age was a determin-

ing factor in his discharge. We will not reevaluate business decisions made in good faith. *Tice v. Lampert Yards, Inc.*, 761 F.2d 1210 (7th Cir.1985). It is enough if the decision was "genuinely and honestly made in an attempt to select the employees to be retained on the basis of performance related considerations." *Dorsch v. L.B. Foster Co.*, 782 F.2d 1421, 1426 (7th Cir. 1986). Thus, if Black honestly believed Bechold to be unqualified, his belief may suffice to show a non-discriminatory reason for discharge. This is not to say that lack of inquiry is irrelevant; it may show that the belief was incredible, and merely a pretext for discrimination. But an honestly held belief, even if not reasonable, does not *per se* prevent the employer from showing a legitimate reason for discharge. The issue becomes one of credibility in determining whether the belief is genuinely held.

█ Although the burden of production shifted to the employer, the ultimate burden of persuasion regarding discriminatory intent remained at all times with the plaintiff. *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 462 (7th Cir.1986). Once IGW articulated a legitimate reason for discharge, the plaintiff was required to show that the proffered reason was merely a pretext for discrimination. Bechold could have met this burden by showing (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate discharge or (3) that the proffered reasons were insufficient to motivate discharge. *La Montagne*, 750 F.2d at 1414–15.

█ Whether IGW's proffered reason was a pretext for discrimination turns on the intent of the employer. *Yarbrough v. Tower Oldsmobile, Inc.*, 789 F.2d 508, 513 (7th Cir.1986). The ultimate question of whether IGW intended to discriminate is a factual question and thus our review is severely restricted by Federal Rule of Civil Procedure, 52(a). *Pullman-Standard v. Swint*, 456 U.S. 273, 102 S.Ct. 1781, 72

L.Ed.2d 66 (1982); *Wattleton v. Int'l Bhd. of Boiler Makers*, 686 F.2d 586 (7th Cir. 1982), *cert. denied, sub nom. Int'l Bhd. of Boiler Makers v. Wattleton*, 459 U.S. 1208, 103 S.Ct. 1199, 75 L.Ed.2d 442 (1983). In reviewing a non-jury case, the district court's "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." FED.R.CIV.P. 52(a); *Anderson v. City of Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). The district court's credibility determinations are given so much deference because "only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Anderson*, 470 U.S. at 575, 105 S.Ct. at 1512.

Bechold attacks IGW's proffered justifications as a pretext for age discrimination by showing (1) that Black's belief that Bechold was unqualified had no basis in fact; and (2) that Lovell, though distinctly inferior to Bechold, was retained. This shows pretext, Bechold argues, because Lovell was trained in perishable tool design by Wayne Orlopp, who Black laid off because Orlopp "didn't understand cutting tools ... from a lathe standpoint." (Tr: V p. 33) This, Bechold argues, in conjunction with the fact that Bechold actually had perishable tooling experience, shows that Black's reasons are merely a pretext for discrimination. In addition, Bechold argues that the district court did not give sufficient weight to plaintiff's evidence of age animus. We will address each of these concerns in turn.

█ The district court's finding, 635 F.Supp. 695, that Black's belief was credible[2] was not clearly erroneous. During the decision-making process, Bechold designed only jigs and fixtures. Once Black decided to contract-out jig and fixture work, it was not incredible that he would

---

**2.** Appellant challenges the lack of express findings of credibility. Where it is clear that the district court made a credibility determination in arriving at its findings of fact, we have treated such findings as tantamount to credibility determinations. We will not require a specific incantation when the basis of a finding is otherwise clear.

decide to layoff Bechold without much investigation. While it might have been more prudent to investigate the assumptions on which Black relied, the failure to adequately investigate does not necessarily detract from the credibility of Black's belief. Similarly, it is not inconceivable that IGW would decide, for legitimate reasons, to retain Lovell instead of either Orlopp or Bechold. Although Lovell was trained by Orlopp in perishable tools, the record does not disclose that Lovell was inferior to Orlopp in drafting—nor can we say, as a matter of law, that a poor teacher presupposes a poor student. Therefore, the district court's finding that IGW's proffered reason was not pretextual is not clearly erroneous.

Bechold further claims that the district court erred in diminishing the probative weight to be given various pieces of appellant's evidence. Bechold showed that of thirty-six salaried employees laid off, twenty-six were in the protected age category. The district court noted that these statistics alone could not prove age animus. Bechold also pointed to age-related comments made by Black and his superior, John Billinghire, over a period of four years which allegedly showed age animus. Bechold complains that the district court did not give sufficient weight to these comments. First, Black once told Lovell that he "like[d] to see ... more younger degreed engineers." When asked about experience, Black replied, "Experience means nothing." The district court found the comment to be neutral on its face and found that any connection between the statements and the layoffs in November was too speculative. Although the comment speaks in terms of age, it is susceptible to the interpretation that Black was merely describing Lovell and complimenting him on his choice to obtain a degree in engineering.

■ Both Black and Billinghire also referred to employees in the engineering department as "older" and "outdated." The district court found that these references reflected the belief that many of the more experienced employees were reluctant to use the new technology and machinery

available. The district court found that management's belief did not support a finding of discrimination. This is a difficult issue, because more experienced employees are likely to be older; and in a technology-laden field like engineering, an employer bent on discrimination could thwart the purposes of ADEA by claiming to fire experienced employees for their lack of familiarity with new technology—rather than their age. It would be wrong to stereotype older employees and presume inability to work with new equipment. *See Syvock v. Milwaukee Boiler Mfg. Co., Inc.,* 665 F.2d 149 (7th Cir.1981). Here, however, the experienced employees were provided with expensive numeric-controlled lathes which Black observed were underused. While a speculative statement that the more experienced employees could probably not use the new machinery might show age animus, the objective observation that the lathes were not being used by the more experienced employees does not necessarily show age animus.

■ The most disturbing statement offered to show age animus was allegedly uttered by Bechold's supervisor, Steven Mobley. Bechold claimed that his supervisor told him that Billinghire had set about to get rid of the older employees. Both Billinghire and Mobley denied making any such statement. The district court however did not make a credibility finding and found instead that the probative weight of the statement was diminished by the contested nature of the statement, Billinghire's lack of input into the selection process, and the fact that the comment was made before anyone knew that a reduction-in-force would be necessary. The weight to be accorded various pieces of evidence is a decision committed to the sound discretion of the district court and will not be overturned absent a showing that the district court abused its discretion. *See, e.g., United States v. Harris,* 761 F.2d 394, 398 (1985). Upon review, we cannot find that any of the above determinations was an abuse of discretion.

Bechold further attacks the district court's finding that Billinghire had no input

in the selection process as contrary to the record. There is evidence that Billinghire attempted to override Black's decisions twice. We think it is sufficiently clear in the context of the district court order, however, that the finding refers to the complete lack of evidence that Billinghire participated, in any way, in the decision to discharge Bechold. While the statistics and some of the comments are susceptible to a finding that Billinghire or Black possessed some age animus, we cannot say that the determination that they did not show discrimination was clearly erroneous.

The district court order is

AFFIRMED.