**Myrna J. DRISKELL, Plaintiff,**

v.

**CONTINENTAL CASUALTY CO., an Illinois corporation d/b/a CNA Insurance Companies, Defendant.**

**No. 96 C 3489.**

United States District Court, N.D. Illinois, Eastern Division.

March 17, 1997.

David Mark Bagdade, Carey M. Stein, Ashman & Stein, Chicago, IL, for Plaintiff.

Allison Carol Blakley, Daniel A. Kazlauski, Fox and Grove, Chartered, Chicago, IL, for Defendant.

## MEMORANDUM OPINION
## AND ORDER

ASPEN, Chief Judge.

Plaintiff Myrna J. Driskell brings this action against her former employer, Continental Casualty Company, alleging that she was terminated on the basis of age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq. Continental has moved for summary judgment. For

the reasons set forth below, the motion is denied.

## I. Background

Myrna Driskell began working for the Continental Casualty Company in 1976, and held a number of different positions there prior to her termination in November 1994 at the age of 43. Def.'s 12(M) ¶¶ 4–5. From 1989 until her termination, Driskell served as a medical malpractice liability underwriter. Her responsibilities were to review applications for insurance, evaluate risks, review loss information, determine continued insurability for existing clients, perform audits, discuss underwriting issues with sales agents, and occasionally meet with agents in the field. Pl.'s 12(N) ¶ 40. As a member of the "individual physicians program unit," Driskell's focus was on individual medical practitioners rather than health care institutions. Def.s 12(M) ¶ 4. Continental was satisfied with Driskell's performance of her duties as an underwriter: a formal performance review conducted in 1994 indicated that her technical skills, interpersonal skills, and her verbal and written communication skills all met—and sometimes exceeded—the company's expectations. *See* Def.'s 12(M) Ex. S–1.

In August 1994, Continental hired James Macdonald as the Chief Operating Officer of its Professional Liability Division (of which Driskell's program unit was a part), and gave him a mandate to improve the Division's profitability and efficiency. Def.'s 12(M) ¶ 7. Macdonald immediately began to formulate a restructuring plan intended to eliminate redundant positions, and sought to shift the Division's focus from individual medical practitioners to large health care institutions. Def.'s 12(M) ¶ 8. One redundancy identified by Macdonald was the existence of separate positions for "liability underwriters" like Driskell and "account executives," who were responsible for certain sales and marketing tasks. Def.'s 12(M) ¶¶ 8–9. Macdonald concluded that combining these responsibilities in a single position called a "production underwriter" would be more efficient, and would enable the Division to reduce its total workforce by terminating some employees. Def.'s 12(M) ¶¶ 9–10. Once this restructuring plan was approved by senior manage-

ment, Macdonald sought to identify which employees would be best equipped to perform in the new production underwriter position, considering such factors as technical skills, communication skills, problem-solving skills, and experience in dealing with institutional clients. Def.'s 12(M) ¶ 11.

After consultation with the supervisors in his division, Macdonald concluded that Driskell was not among the employees who deserved to be shifted into one of the new production underwriter positions. Def.'s 12(M) ¶ 14. According to Macdonald, the supervisors felt that Driskell's technical and communication skills were adequate but not especially strong, and they were concerned about her lack of experience dealing with institutional clients. *Id.* Consequently, Driskell was terminated on November 7, 1994, along with 13 of her co-workers whose skills were likewise seen as inadequate or redundant. Def.'s 12(M) ¶¶ 12, 16; Pl.'s 12(N) ¶ 42.

Not all of the company's liability underwriters were terminated in this manner. In particular, Continental elected to retain Michelin Abrahamson as one of its new production underwriters. Def.'s 12(M) ¶ 21. At the time of Continental's restructuring, Abrahamson was 23 years old and had worked at the company for only one month, plus 12 months of training. Pl.'s 12(N) ¶ 36. Since November 7, Abrahamson has worked with Driskell's former clients and assumed most of her former responsibilities, though she has also been given additional sales and marketing responsibilities that had never been performed by Driskell. Def.'s 12(M) ¶ 24; Pl.'s 12(N) ¶¶ 40–41; Johnson Dep. at 32–34.

Driskell infers from this sequence of events that the real reason why Continental chose to terminate her rather than Abrahamson was the 20–year difference in their ages. Having filed a charge of discrimination with the EEOC and having received a right to sue letter, Driskell now brings this claim asserting that Continental has violated the ADEA. Continental contends that Driskell has failed to raise a genuine issue of material fact regarding its discriminatory intent and moves for summary judgment.

## II. Summary Judgment Standard

"A district court must grant summary judgment where the record before it shows that 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Smith v. Shawnee Library Sys.*, 60 F.3d 317, 320 (7th Cir.1995) (quoting Fed.R.Civ.P. 56(c)). The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If this burden is carried, in order to defeat summary judgment the non-movant "must set forth specific facts showing that there is a genuine issue for trial," and cannot merely rest on the allegations contained in the pleadings. Fed.R.Civ.P. 56(e); *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553. In deciding a motion for summary judgment we read the facts in a light most favorable to the non-moving party, *Cuddington v. Northern Ind. Public Serv. Corp. (NIPSCO)*, 33 F.3d 813, 815 (7th Cir.1994), and draw reasonable inferences from those facts in the non-movant's favor. *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991).

## III. Discussion

Under the ADEA, an employer may not terminate an employee between the ages of forty and seventy on the basis of age. *See* 29 U.S.C. §§ 623(a)(1), 631(a). The plaintiff in an ADEA case need not prove that age was the sole factor for the employer's decision, only that "age was a determining factor in the sense that [she] would not have been fired but for the employer's motive to discriminate on the basis of age." *Oxman v. WLS–TV*, 846 F.2d 448, 452 (7th Cir.1988).

A plaintiff may prove intent to discriminate by either of two methods. First, a plaintiff may present "direct" evidence, meaning "evidence that can be interpreted as an acknowledgment of discriminatory intent by the defendant or its agents." *Hill v. Burrell Communications Group, Inc.*, 67 F.3d 665, 667 (7th Cir.1995) (quoting *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736

(7th Cir. 1994)). Alternatively, a plaintiff may create a presumption that her employer was motivated by discriminatory animus through the use of the burden-shifting procedure established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). This method of proving invidious discrimination requires the plaintiff to first put forth sufficient evidence of the elements of her prima facie case. *Collier v. Budd Co.*, 66 F.3d 886, 889 (7th Cir.1995). If the plaintiff can do this, a rebuttable presumption of discrimination arises, and the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the termination. *Smith v. Cook County*, 74 F.3d 829, 830 (7th Cir.1996). Once the defendant satisfies this burden of production, then the plaintiff must come forward with evidence showing that this explanation is actually a pretext for unlawful discrimination. *Oxman*, 846 F.2d at 452. Where the plaintiff cannot present evidence that the proffered justification is pretextual. the defendant is entitled to summary judgment. *Collier*, 66 F.3d at 889; *DeLuca v. Winer Indus., Inc.*, 53 F.3d 793, 797 (7th Cir.1995). Driskell, lacking any direct evidence of discrimination, seeks to prove Continental's discriminatory intent by use of the *McDonnell Douglas* framework.

### A. Plaintiff's Prima Facie Case

When a case involves an employer's reduction in force (RIF), an ADEA plaintiff makes out her prima facie case by showing that: (1) she was in the protected age group, (2) she was performing to his employer's legitimate expectations, (3) she was discharged, and (4) substantially younger employees were treated more favorably. *See Collier*, 66 F.3d at 889; *Roper v. Peabody Coal Co.*, 47 F.3d 925, 926 (7th Cir.1995); *see also O'Connor v. Consolidated Coin Caterers Corp.*, —— U.S. ——, ——, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996) (holding that the younger employees need not be outside the protected class as long as they are "substantially younger" than the plaintiff).[1]

1. One recent case from this district, *Chiaramonte v. Fashion Bed Group, Inc.*, 932 F.Supp. 1080, 1087–88 (N.D.Ill.1996), has interpreted *O'Connor*

as requiring a substantial change to the fourth element of the plaintiff's prima facie case in RIF cases. Whereas *Collier* and *Roper* formerly re-

■ Driskell has unquestionably made out a prima facie case of age discrimination. At the time of her termination pursuant to Continental's RIF she was 43 years old and was performing her duties to Continental's expectations. Michelin Abrahamson, whom Continental chose to retain as a production underwriter, is 20 years younger than Driskell. At the time the decision to terminate Driskell rather than Abrahamson was made, the two were similarly-situated: they were performing similar duties as liability underwriters for Continental. These facts are sufficient to warrant an inference that Continental's "employment decision was based on [an illegal] discriminatory criterion." *O'Connor,* —— U.S. at ——, 116 S.Ct. at 1310.

### B. Defendant's Non–Discriminatory Reasons

■ The second stage of the *McDonnell Douglas* framework requires the defendant to articulate at least one legitimate, non-discriminatory reason for the termination. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993); *Gadsby v. Norwalk Furniture Corp.,* 71 F.3d 1324, 1330 (7th Cir.1995). The articulated reasons must be "clearly set forth[ ] through the introduction of admissible evidence." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 255, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). At this stage it is not necessary that the defendant's proffered reasons be persuasive as long as they are supported by admissible evidence. *Hicks,* 509 U.S. at 510, 113 S.Ct. at 2749; *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094.

Continental offers three non-discriminatory reasons for its decision to terminate Driskell. First, the company contends that the position formerly held by Driskell—liability underwriter—was eliminated pursuant to its restructuring plan. *See* Def.'s Br. at 9. Second, Continental claims that it elected not to place Driskell in the new "production underwriter" position because it believed that her lack of experience underwriting insurance policies for health care institutions would be a problem. *See id.* Third, Continental claims that it believed that Driskell's technical and communication skills were not strong enough for her to succeed as a production underwriter. *See id.* As reflected in the *Background* section *supra,* Continental's 12(M) statement and accompanying exhibits contain sufficient admissible evidence to support these assertions. *See, e.g.,* Def.'s 12(M) ¶¶ 9, 14. Thus, the burden shifts back to Driskell to demonstrate that these ostensible reasons were pretextual.

### C. Pretext

■ A plaintiff may show that her employer's proffered reasons for terminating her were pretextual by producing evidence that shows that they are "unworthy of credence." *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095; *Wolf v. Buss (America) Inc.,* 77 F.3d 914, 919 (7th Cir.1996) ("Pretext means more than a mistake on the part of the employer; pretext 'means a lie, specifically a phony reason for some action.' "). This showing can be made by demonstrating that: "(1) the proffered reasons are factually baseless; (2) the proffered reasons were not the actual motivation for the discharge; or (3) the proffered reasons were insufficient to motivate the discharge." *Wolf,* 77 F.3d at 919. In general, where a defendant offers

---

quired the plaintiff merely to show that younger employees were treated more favorably, *Chiaramonte* suggests that the fourth element should now require the plaintiff to present "evidence ... which creates an inference that [her] termination sprang from ... age discrimination." *Id.* at 1087. We disagree. We cannot discern how *O'Connor* supports such a change: *O'Connor* merely indicates that the employee treated more favorably than the plaintiff need not be outside of the class protected by the ADEA—she need only be "substantially younger" than the plaintiff. *See O'Connor,* —— U.S. at ——, 116 S.Ct. at 1310. This is in perfect harmony with the position already adopted by the Seventh Circuit in *Kral-*

*man v. Illinois Dept. of Veterans' Affairs,* 23 F.3d 150, 154–56 & n. 7 (7th Cir.1994), and merely requires the addition of the word "substantially" to the formulation employed in *Collier* and *Roper.* Moreover, the formulation suggested by *Chiaramonte* in effect collapses the pretext stage of the *McDonnell Douglas* framework into the prima facie case stage, increasing the potential for confusion. *See* Jessica Lind, Note, *The Prima Facie Case of Age Discrimination in Reduction–In–Force Cases,* 94 MICH.L.REV. 832, 843–45 (1995) (critiquing the practice of placing open-ended evidentiary burdens on plaintiffs at the prima facie case stage).

more than one non-discriminatory reason for its actions, the plaintiff must raise a genuine issue of fact regarding the veracity of each of the reasons or summary judgment will be granted. *See id.* at 920.

Continental's first non-discriminatory reason for terminating Driskell is that her position was eliminated. In their briefs, the parties engage in vigorous debate regarding the veracity of this claim, but their dispute appears to be more a matter of semantics than of substance. Continental is obviously correct in its claim that it has eliminated the job title "liability underwriter" from its corporate lexicon. But this is the only sense in which Driskell's position has been "eliminated" as we understand the term.[2] All of the duties formerly performed by liability underwriters at Continental continue to be performed by Continental employees. *See* Def.'s 12(M) ¶ 21. These duties do not appear to have been scattered "piecemeal" throughout the company, but remain concentrated in the hands of employees for whom they constitute a large portion of their total responsibilities. *See id.;* Johnson Dep. at 33–34. The only apparent difference between "liability underwriters" and "production underwriters" is that the latter have some additional responsibilities in the sales and marketing area. *See* Johnson Dep. at 33–34 (stating that for those liability underwriters who became production underwriters, their "duties remained the same, and in addition to that they were involved in direct sales, and they would give presentations with the agents if need be"). The similarity between the two positions is further illustrated by the fact that Continental retained two liability underwriters to become production underwriters in the restructured department, *see* Def.'s 12(M) ¶¶ 14, 20, implying that the

required skills overlap. In sum, we think there is ample evidence from which a jury might conclude that Driskell's position has not been eliminated but merely renamed and modified: this would render Continental's first non-discriminatory reason for terminating Driskell "factually baseless" and thus pretextual, *see Wolf,* 77 F.3d at 919.

Continental's second non-discriminatory reason for refusing to retain Driskell is that it believed her lack of experience underwriting policies for health care institutions would be a problem as the company increasingly concentrated its efforts on that segment of the market. In determining whether this reason is pretextual, we must bear in mind that it is not necessary for Continental to prove that its belief was correct, but only that it was sincere. *See Bechold v. IGW Sys., Inc.,* 817 F.2d 1282, 1285 (7th Cir.1987). The sincerity of Continental's concern about lack of experience is rendered highly dubious, however, by the fact that it selected Michelin Abrahamson to be a production underwriter. At the time these decisions were made, Abrahamson had only one month of experience as an underwriter, and this month appears to have been spent underwriting policies for dentists rather than large health care institutions. Pl.'s 12(N) ¶ 36. Because Abrahamson was only 22 years old when she entered Continental's training program, it is highly unlikely that she had any prior experience underwriting insurance policies for health care institutions. Construing these facts in a light most favorable to Driskell, we think there is genuine question of material fact as to whether Continental's refusal to retain Driskell as a production underwriter was really motivated by a belief that she lacked sufficient experience dealing with in-

---

**2.** A position is "eliminated" when the employer no longer requires any of its employees to perform the major functions of that position. For example, positions were eliminated in *Sheehan v. Daily Racing Form, Inc.,* 104 F.3d 940 (7th Cir. 1997), where computers replaced editors who had manually laid out articles for a newspaper, and in *Smith v. Cook County,* 74 F.3d 829 (7th Cir.1996), where a hospital elected to have many of its information management services performed by an independent contractor rather than by its own employees. When positions are

"eliminated" in this sense, the elimination may constitute a non-discriminatory reason for the discharge of the plaintiff. But in the typical RIF case, such as this one, an employer simply wishes to reduce the number of employees performing a certain function: the function itself, however, must still be performed by the employees who remain. In these cases, the position has not been eliminated, but only the excess employees. The mere existence of a RIF does not explain why the plaintiff was let go while others were retained.

**1190**

stitutions.[3]

Continental's third non-discriminatory reason for not retaining Driskell is that it believed her technical and communication skills "were not ... especially strong." Def.'s 12(M) ¶ 14. This contention is similarly undercut by the available facts. The most telling evidence is found in Driskell's performance evaluation, performed just a few months prior to her termination, which contains a wealth of praise for her technical and communication skills. In the section discussing technical knowledge, her evaluator observes that "[Driskell] has a good understanding of the requirements of a professional liability underwriter." *See* 12(M) Ex. S–1.4.[4] The evaluator also states that "[t]he quality of [Driskell's] work is good. She presents her referrals well and has done a very good job on her audits and program renewal materials." *See id.* Regarding her interpersonal skills, Driskell "works well with her coworkers in underwriting and those individuals in other corporate areas that we deal with. She is highly regarded by [customers]. [She] also responds well to direction." *See id.* With respect to communication skills, the evaluator says that Driskell "is a very effective communicator. She presents herself professionally in both her written and verbal communications." *See id.* At the end of the evaluation, "communication skills" is listed as one of Driskell's strengths. *See id.* Admittedly, this evaluation only addresses the skills pertinent to Driskell's position as a liability underwriter rather than the full set of skills required to be an effective production underwriter. It certainly does not prove that Driskell would have been the best—or even an adequate—choice for one of the production underwriter positions. But it nevertheless casts doubt upon Continental's claim that it believed Driskell's technical and communication skills were "not ... strong." This doubt is sufficient to create a genuine issue of material fact regard-

ing whether Driskell's supposedly inadequate skills were a pretext for terminating her. *Cf. Testerman v. EDS Tech. Prods. Corp.,* 98 F.3d 297, 303 (7th Cir.1996) ("[W]hen the sincerity of an employer's asserted reasons for discharging an employee is cast into doubt, a factfinder may reasonably infer that unlawful discrimination was the true motivation.... In such circumstances, summary judgment is improper.").

## IV. Conclusion

For the foregoing reasons, the defendant's motion for summary judgment is denied.

It is so ordered.

---

3. Continental also hints that Driskell's lack of sales experience was a factor in its decision to terminate her, *see* Def.'s 12(M) ¶ 14, but this argument, even if it had been fully developed, fails under the same reasoning set forth above with respect to institutional experience.

4. Driskell's overall rating for technical skills was a "2," which the evaluation sheet defines as: "Performance meets and sometimes exceeds the expected level for the position. Individual has extensive knowledge of the position and is able to initiate and perform most work with minimal direction." *See* Def.'s 12(M) Ex. S–1.