DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Plaintiff-Appellant Kathryn Thomson has appealed from the judgment of the Summit County Court of Common Pleas which granted Defendant-Appellee Merriman CCRC, Inc.'s ("the Merriman") motion for summary judgment. This Court affirms.
 I {¶ 2} The Merriman is a nursing home in Summit County owned and operated by Appellees. In April 2000, Appellant began working at the Merriman home as a staff nurse. In March 2004, Appellant was promoted to night charge nurse, a management position. During Appellant's employment, Kevin McMahon was the administrator of the Merriman, Carol Chieda was the director of nursing, and Brenda Johnson was the assistant director of nursing. Shortly after becoming a charge nurse, Appellant reported that a co-worker, Steven Knight, had pornographic magazines at work. After an investigation, no disciplinary action was taken against Knight.
 {¶ 3} Near the end of the summer of 2004, another nursing assistant reported to Appellant that Knight had left his previous employment under a suspicion of abuse. Further, another nursing assistant reported that a patient was clamping her legs together during bathing. Appellant recognized this as a sign of abuse. Shortly thereafter, an anonymous report to the Ohio Department of Health ("ODH") generated an investigation. Once the Merriman was contacted by the ODH, it interviewed its employees. As a result of these interviews, numerous employees, including Appellant, were issued corrective counseling/performance improvement plans. The Merriman issued these plans premised upon a finding that several of its employees had failed to report knowledge of possible patient abuse, a violation of written company policies.
 {¶ 4} On December 16, 2004, Naomi Chamberlin, the daughter of the patient who was suspected to have been abused at the Merriman, appeared at the home. At that time, Chamberlin spoke with Pam Maldonado, a nurse at the Merriman. Maldonado indicated that Chamberlin was near hysteria during their conversation. As a result of the content of her conversation with Chamberlin, Maldonado reported to Chieda and Johnson. Maldonado reported that Chamberlin informed her that Appellant had stated to Chamberlin that the Merriman would not properly handle the allegation of abuse and that the Merriman had not handled other matters in the past. Johnson and Chieda told Maldonado to place the content of her conversation with Chamberlin in writing. In turn, Maldonado wrote out the conversation she had with Chamberlin and signed and dated the document.
 {¶ 5} On December 21, 2004, Appellant was interviewed by the ODH. Immediately following the interview, Appellant was called into a meeting with Johnson and McMahon and her employment was terminated. McMahon asserted that Appellant was fired for conduct detrimental to the Merriman. Following her termination, Appellant brought suit against the Merriman, alleging wrongful discharge in violation of public policy and retaliatory discharge in violation of the protections contained in R.C. 3721.24.
 {¶ 6} The Merriman moved for judgment on the pleadings on Appellant's wrongful discharge claim, and the trial court granted that motion on January 24, 2006. On February 15, 2006, the Merriman moved for summary judgment on the sole remaining count in the complaint. Appellant responded in opposition to the motion. On April 24, 2006, the trial court granted the Merriman's motion for summary judgment. Appellant has timely appealed from the trial court's judgment, raising one assignment of error for review.
 II Assignment of Error
"THE TRIAL COURT ERRED BY GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT AS TO APPELLANTS' CLAIM FOR RETALIATION UNDER R.C. § 3721.24."
 {¶ 7} In her sole assignment of error, Appellant has argued that the trial court erred in granting summary judgment in favor of the Merriman. Specifically, Appellant has alleged that she submitted sufficient evidence to demonstrate a prima facie case of retaliation and to demonstrate that the Merriman's offered rationale for her termination was pretextual. We disagree.
 {¶ 8} An appellate court reviews an award of summary judgment de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102,105. This Court applies the same standard as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Viock v. Stowe-Woodward Co. (1983),13 Ohio App.3d 7, 12. Pursuant to Civ.R. 56(C), summary judgment is proper if:
"(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327.
 {¶ 9} The party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying portions of the record that demonstrate an absence of a genuine issue of material fact as to some essential element of the non-moving party's claim. Dresher v. Burt
(1996), 75 Ohio St.3d 280, 292. To support the motion, such evidence must be present in the record and of the type listed in Civ.R. 56(C). Id.
 {¶ 10} Once the moving party's burden has been satisfied, the non-moving party must meet its burden as set forth in Civ.R. 56(E). Id. at 293. The non-moving party may not rest upon the mere allegations and denials in the pleadings, but instead must point to or submit some evidentiary material to demonstrate a genuine dispute over the material facts. Id. See, also, Henklev. Henkle (1991), 75 Ohio App.3d 732, 735.
 {¶ 11} Pursuant to Civ.R. 56(C):
"Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."
Based upon the foregoing standard of review, we examine the evidence presented as it relates to Appellant's claim of retaliatory discharge.
 {¶ 12} In its motion for summary judgment, the Merriman relied upon the affidavits of Kevin McMahon, the Administrator at the Merriman, Carol Chieda, the Director of Nursing at the Merriman, and Brenda Jones, the Assistant Director of Nursing at the Merriman. In addition, the Merriman relied upon the deposition testimony of Pamela Maldonado, an employee at the Merriman. In opposition, Appellant relied upon her own deposition, Maldonado's deposition, and the deposition of Naomi Chamberlin, the daughter of one of the patients at the Merriman. Ultimately, the trial court found in the Merriman's favor, granting its motion for summary judgment.
 {¶ 13} R.C. 3721.24(A) provides as follows:
"No person * * * shall retaliate against an employee * * * who, in good faith, makes a report of suspected abuse or neglect of a resident or misappropriation of the property of a resident; indicates an intention to make such a report; provides information during an investigation of suspected abuse, neglect, or misappropriation conducted by the director of health; or participates in a hearing conducted under section 3721.23 of the Revised Code or in any other administrative or judicial proceedings pertaining to the suspected abuse, neglect, or misappropriation."
The First District aptly summarized the elements of a cause of action under R.C. 3721.24 as follows:
"To establish a prima facie case for retaliatory discharge under R.C. 3721.24, the employee must show the following: (1) the employee engaged in a protected activity; (2) the employee was the subject of adverse employment action; and (3) a causal link existed between the protected activity and the adverse action. To meet this test, the employee must show that the activity was protected, that the employer knew about the activity, and that the alleged retaliation followed closely in time to the protected activity. Hoeffel v. Henry Cty. Bd. of Commrs. (Sept. 16, 1996), 3d Dist. No. 7-95-9, citing Neal v. Hamilton Cty.
(1993), 87 Ohio App.3d 670, 677.
"If the employee meets his or her burden to show these elements, the burden shifts to the employer to show that the reason for the discharge was legitimate. If the employer can establish a legitimate reason, the burden shifts back to the employee to show that the employer's articulated reason was pretextual. Id. To avoid summary judgment, the employee must present some evidence that the employer's proffered reason was untrue. Surry v. Cuyahoga Comm. College, 149 Ohio App.3d 528,2002-Ohio-5356, 778 N.E.2d 91, at ¶ 24 and ¶ 29." Dolan v. St.Mary's Memorial Home, 153 Ohio App.3d 441, 2003-Ohio-3383, at ¶19-20.
In its motion for summary judgment, the Merriman conceded that Appellant was engaged in a protected activity, cooperating with the ODH investigation, and suffered an adverse employment action, Appellant was terminated from her employment. These elements are not challenged on appeal.
Protected Activity
 {¶ 14} Appellant, however, asserts that her additional activity of communicating with Naomi Chamberlin was also protected activity, although Appellant denies that she made statements to Chamberlin. Initially, we note that Appellant did not plead such a fact as a protected activity in her complaint, nor did she rely on such a theory at any point in the proceedings below. Accordingly, it is doubtful that she has preserved the issue for our review.
 {¶ 15} In its motion for summary judgment, the Merriman asserted that Appellant was terminated because she informed Chamberlin that the Merriman would not properly handle the reports of sexual abuse and had not handled things in the past. Assuming arguendo that Appellant made these statements, they do not fall within the protected activity detailed under R.C.3721.24. Appellant was not reporting sexual abuse, nor can her comments to Chamberlin be construed as aiding in an investigation of abuse. Rather, assuming Appellant made those statements, they served only to disparage the Merriman, not to further the policy of reporting abuse. Accordingly, Appellant cannot assert a claim that her statements to Chamberlin were protected activity.
Causal Connection
 {¶ 16} Initially, we note that while Appellant asserts that she reported the alleged sexual abuse of a resident to the ODH, there is no indication that the Merriman was aware of her report, which is confidential by law. Accordingly, she cannot establish that the Merriman took action as a result of that protected activity. Every management official at the Merriman (McMahon, Johnson, and Chieda) asserted that he or she did not know, nor had he or she ever learned the name of the individual who reported the suspected abuse to the ODH. Therefore, with respect to her initial report of abuse to the ODH, there is no genuine issue of material fact regarding causation.
 {¶ 17} Appellant has next asserted that the temporal proximity of her firing and her meeting with the ODH is sufficient to establish her prima facie case of retaliation. Appellant has alleged that she was terminated immediately following her interview with the ODH. In support of her argument, Appellant relies upon Clark Cty. School Dist. v. Breeden
(2001), 532 U.S. 268. In Breeden, the Court noted as follows:
"The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be `very close,' O'Neal v. Ferguson Constr. Co.
(C.A. 10, 2001), 237 F.3d 1248, 1253. See, e.g., Richmond v.ONEOK, Inc. (C.A. 10, 1997), 120 F.3d 205, 209 (3-month period insufficient); Hughes v. Derwinski (C.A. 7, 1992),967 F.2d 1168, 1174-1175 (4-month period insufficient). Action taken (as here) 20 months later suggests, by itself, no causality at all." Id. at 273-274.
Breeden, however, does not stand for the proposition that close temporal proximity will always establish a prima facie case of retaliation. In Warren v. Ohio Dept. of Public Safety
(C.A.6, 2001), 24 Fed.Appx. 259, the Sixth Circuit was presented with a fact pattern analogous to the facts presented herein. InWarren, the plaintiff attempted to rely solely upon temporal proximity to demonstrate a prima facie case. In rejecting such an argument, the court noted that the decision to terminate the plaintiff had occurred before the employer learned of the protected activity. Id. at 266.
 {¶ 18} We are presented with similar facts. In his affidavit, McMahon stated that he had decided to terminate Appellant's employment on December 17, 2004. Appellant did not interview with the ODH until December 21, 2004. Like the plaintiff in Warren,
Appellant has asserted that McMahon's statement is self-serving and that he failed to make such a statement during his deposition. McMahon's statement, however, does not contradict any of his statements in his deposition. Rather, it appears that McMahon was never asked during his deposition when he made the decision to terminate Appellant.
 {¶ 19} Furthermore, McMahon's statement is bolstered by other evidence. In his affidavit, McMahon asserted that he made the decision to terminate Appellant after meeting with Johnson and Chieda. Johnson and Chieda both testified that they met with Maldonado on December 17, 2004. In addition, Maldonado wrote out a statement on December 17, 2004, asserting that Chamberlin approached her near hysteria. During that conversation, Chamberlin told Maldonado that Appellant had informed her that the Merriman would not handle the allegations of abuse regarding Chamberlin's mother and that the Merriman had failed to handle things in the past. The date of these activities corresponds to the date McMahon asserted he chose to terminate Appellant. Furthermore, it is undisputed that Appellant was previously disciplined for failing to follow the Merriman's policies regarding the reporting of abuse. As such, her alleged statements to Maldonado constituted the second violation of the Merriman's policies in a very short span. Accordingly, the sole evidence in the record supports McMahon's affidavit. Appellant offered no evidence to contradict his statement. Therefore, the sole evidence before the trial court demonstrated that McMahon intended to terminate Appellant prior to her engaging in any protected activity. "Employers need not suspend previously contemplated employment actions upon learning of protected activity by the employee." Warren, supra, at 266. The Merriman, therefore, was not obligated to suspend its intention to fire Appellant merely because she met with the ODH.
 {¶ 20} Additionally, the Merriman had no way of knowing what Appellant did or did not say during her interview with the ODH. Numerous employees were interviewed the same day by ODH, but only Appellant was terminated. These facts serve to bolster McMahon's statement that Appellant's interview with the ODH was unrelated to her termination. As such, there is no genuine issue of material fact regarding causation and Appellant's claim must fail as a matter of law.
Pretext
 {¶ 21} Finally, assuming arguendo that Appellant demonstrated a prima facie case of retaliation, her claim still must fail. As noted above, the Merriman supplied a legitimate business reason for terminating Appellant. Maldonado supplied a written statement to management that a patient's daughter entered the home in a near hysterical state. The patient's daughter, Naomi Chamberlin, told Maldonado that Appellant had informed her that the Merriman would not handle the allegations of sexual abuse that involved Chamberlin's mother. McMahon stated in his affidavit that allegations of sexual abuse are taken very seriously by the Merriman and that Appellant's statements only served to disparage the Merriman's reputation. McMahon further asserted that the because of the highly emotional environment created by allegations of sexual abuse, prompt action was required by the Merriman. Accordingly, the Merriman successfully rebutted any prima facie case that Appellant may have demonstrated.
 {¶ 22} In response, Appellant failed to supply evidence that the Merriman's proffered legitimate reason was pretextual. In an attempt to meet her burden, Appellant asserted that the Merriman conducted a stunted investigation by failing to let her rebut the letter written by Maldonado and by not contacting Chamberlin. Appellant asserted that other employees were given the opportunity to rebut allegations against them prior to being disciplined. Furthermore, Appellant alleged that the Merriman's proffered reason for her termination lacked any basis in fact.
 {¶ 23} Generally, there are three ways in which a plaintiff may show that her employer's proffered reasons for dismissing her are pretext. The plaintiff may demonstrate pretext by showing: (1) that the stated reasons for her firing had no basis in fact, (2) that the stated reasons for her firing were not the actual reasons, and (3) that the stated reasons for her firing were insufficient to explain the discharge. See Harris v. ElectronicData Systems Corp. (C.A.6, 1996) 78 F.3d 584, citing Dubey v.Stroh Brewery Co. (Mich. 1990), 462 N.W.2d 758, 760.
"The first type of showing consists of evidence that the proffered bases for the plaintiff's discharge never happened and are thus factually false. The third showing ordinarily consists of evidence that other employees not in the protected class were not fired although they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff. These two types of rebuttals are direct attacks on the credibility of the employer's proffered motivation for firing [the] plaintiff and, if shown, provide an evidentiary basis for what the Supreme Court has termed a suspicion of mendacity. In the second type of rebuttal, the plaintiff admits that such conduct could motivate dismissal. Thus, the plaintiff indirectly attacks the credibility of the proffered explanation by showing, through the sheer weight of circumstantial evidence, that an illegal motivation was more likely than the explanation offered by the defendant." (Internal citations and quotations omitted.) Id.
 {¶ 24} Appellant asserted in the trial court that she never made disparaging remarks about the Merriman to Chamberlin, thus creating a genuine issue of material fact as to whether the Merriman's proffered reason for her termination had any basis in fact. However,
"even if a plaintiff did not in fact commit the violation with which he or she was charged, an employer may successfully rebut any prima facie case of disparate treatment by showing that it honestly believed that the employee committed the violation.Mayberry v. Vought Aircraft Co. (C.A. 5, 1995), 55 F.3d 1086,1091; Jones v. Gerwens (C.A. 11, 1989), 874 F.2d 1534, 1540;Bechold v. IGW Sys., Inc. (C.A. 7, 1987), 817 F.2d 1282, 1285. These courts have made clear that the focus of plaintiff's rebuttal should not be whether an employer made an erroneous decision, but whether the decision was made with a discriminatory motive. Mayberry, 55 F.3d at 1091." See Harris, supra.
Appellant offered no rebuttal to the Merriman's evidence that it had no reason to discount Maldonado's statement. Over and again during his deposition, McMahon reiterated that he felt that Maldonado was a credible source. During her deposition, Maldonado indicated that she held no ill feelings toward Appellant and that she merely wrote down what Chamberlin had said. Like the plaintiff in Harris, Appellant has offered no evidence as to why it would have been unreasonable for the Merriman to have believed Maldonado's report. Id. Accordingly, Appellant did not present a genuine issue of material fact on the issue of pretext as it relates to the Merriman's good faith belief that she made a disparaging statement to Chamberlin.
 {¶ 25} Finally, through her evidence regarding Knight's discipline, Appellant effectively sought to demonstrate that she was treated differently than similarly situated employees. The Sixth Circuit has established a series of affinities ordinarily essential to a finding that individuals are similarly situated.Mitchell v. Toledo Hospital (C.A.6, 1992), 964 F.2d 577,581-582. These include that "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Id. at 583. Appellant has not identified any similarly situated individual.
 {¶ 26} It is undisputed that Appellant's position as a charge nurse was considered a management position. Appellant identified no other management personnel who were treated differently during the disciplinary process. Furthermore, Appellant identified no other employee who engaged in similar conduct, i.e., who made disparaging remarks about the Merriman. Accordingly, the trial court properly concluded that Appellant's evidence regarding discipline against other dissimilar employees for dissimilar infractions did not rebut McMahon's statement that her termination was justified due the highly emotional situation that Appellant's comments served to inflame. Furthermore, it is undisputed that Appellant was initially treated identically to co-workers who had failed to report suspected abuse, i.e., she was written up for violations just as other employees were written up for infractions. Thus, her termination resulted from a second violation of company policies. Appellant offered no evidence that any other employee, let alone a similarly situated employee, was treated differently following a second violation of company policy. Appellant, therefore, failed to raise a genuine issue of material fact that the Merriman's proffered, legitimate reason for her dismissal was pretextual. Accordingly, the trial court did not err in granting the Merriman's motion for summary judgment.
 {¶ 27} Appellant's sole assignment of error lacks merit.
 III {¶ 28} Appellant's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Slaby, P.J. Carr, J. concur.