[Cite as *Scalia v. Aldi, Inc.*, 2011-Ohio-6596.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

MARIA SCALIA

    Appellant

    v.

ALDI, INC.

    Appellee

C.A. No.     25436

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2006 07 4183

DECISION AND JOURNAL ENTRY

Dated: December 21, 2011

---

BELFANCE, Presiding Judge.

{¶1}   Appellant, Maria Scalia, appeals the judgment of the Summit County Court of Common Pleas that granted summary judgment to her former employer, Aldi. This Court affirms, in part, and reverses, in part.

**I.**

{¶2}   Ms. Scalia injured her elbow while working at Aldi in a position that required occasional lifting under a job description that required the ability to lift fifty pounds. She filed a claim for workers' compensation benefits and started receiving temporary total disability ("TTD") payments in January 2005. In late 2005, Aldi obtained an independent medical examination through its third-party administrator of workers' compensation claims. Dr. Richard Kepple, the physician who performed the examination, opined that Ms. Scalia had not reached maximum medical improvement and still required restrictions on her ability to lift. In January 2006, Dr. Kepple examined her again. This time, he concluded that Ms. Scalia had reached

maximum medical improvement and required no further restrictions. Ms. Scalia's physician of record, however, left some lifting restrictions in place.

{¶3} Based on the results of Dr. Kepple's independent medical examination, Aldi offered to return Ms. Scalia to her position, but did not clarify whether the offer was subject to the restrictions imposed by her physician of record. According to Ms. Scalia, Aldi did not respond to her inquiry on the subject. Instead, again in reliance on Dr. Kepple's examination, Aldi moved to terminate Ms. Scalia's TTD benefits. After a hearing, during which Ms. Scalia presented the opinion of her physician of record that she was still under work restrictions, the Bureau of Workers' Compensation determined that she had reached maximum medical improvement and terminated her TTD benefits. Although Ms. Scalia expressed willingness to return to work without restriction, and despite Dr. Kepple's opinion that she could work without restriction, Aldi did not allow Ms. Scalia to return to work. Instead, on April 20, 2006, Aldi terminated Ms. Scalia's employment under the terms of its attendance policy, which provided for termination in the event that an employee had done no work for Aldi during the previous twelve months. Ms. Scalia remained under her personal physicians' work restrictions until February 2007, and from April 2006 until that time, she continued to pursue appeals of the TTD determination and applications for wage loss compensation under the theory that she was still restricted from working.

{¶4} Ms. Scalia sued Aldi for retaliating against her for participation in the workers' compensation system in violation of R.C. 4123.90 and for wrongful discharge in violation of public policy. The basis for both claims was application of Aldi's facially neutral attendance policy to Ms. Scalia. In applying the policy, Aldi counted the period of time Ms. Scalia was absent due to her injury and receiving TTD. Ms. Scalia also claimed that Aldi fired her because

it perceived her to have a disability in violation of R.C. 4112.02. The trial court granted summary judgment to Aldi on all three claims, and Ms. Scalia appealed.

## II.

### ASSIGNMENT OF ERROR I

"THE TRIAL COURT ERRED IN ITS JULY 23, [2007] ORDER BY GRANTING APPELLEE'S MOTION [FOR] SUMMARY JUDGMENT ON APPELLANT'S CLAIM FOR RETALIATION IN VIOLATION OF OHIO REVISED CODE §4123.90."

### ASSIGNMENT OF ERROR II

"THE TRIAL COURT ERRED IN ITS APRIL 23, 2008, ORDER BY DENYING APPELLANT'S MOTION FOR RECONSIDERATION OF THE TRIAL COURT'S RULING ON APPELLANT'S RETALIATION CLAIM FOLLOWING THE OHIO SUPREME COURT'S ANNOUNCEMENT OF ITS DECISION IN *BICKERS V. W. & S. LIFE INS. CO.*, 116 OHIO ST.3D 351, 2007-OHIO-6751."

{¶5} Ms. Scalia's first two assignments of error are that the trial court erred by granting summary judgment to Aldi on her statutory retaliation claim. Ms. Scalia has made two arguments with respect to this claim. Her first argument is that the trial court incorrectly determined that application of a facially neutral attendance policy to a worker who has received TTD benefits is not retaliatory conduct per se within the meaning of R.C. 4123.90. Her second argument is that there are genuine issues of material fact that prevented summary judgment on the retaliation claim. We agree with the trial court that application of a facially neutral attendance policy does not constitute retaliation per se under R.C. 4123.90, and Ms. Scalia's first and second assignments of error are overruled to that extent. Nonetheless, they are sustained in part because the trial court failed to consider Ms. Scalia's retaliation claim in its broader context.

Absenteeism and Retaliation Per Se

**{¶6}** Under R.C. 4123.90, it is unlawful for an employer to "discharge * * * any employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer." Ms. Scalia argues that in *Coolidge v. Riverdale Local School Dist.*, 100 Ohio St.3d 141, 2003-Ohio-5357, the Ohio Supreme Court expanded the scope of conduct considered retaliatory to include application of an otherwise neutral attendance policy.

**{¶7}** In *Coolidge*, the Court considered whether a public school teacher whose contract was terminated for absenteeism while she was receiving TTD benefits was terminated for "good and just cause" under R.C. 3319.16, which governs teacher contracts. Id. at ¶¶ 1, 20. The Court noted that Ms. Coolidge was not an at-will employee, but went on to consider the public policy underlying the workers' compensation system because, in its view, "if Coolidge can show that her discharge contravened public policy expressed in the Workers' Compensation Act, she will have established that her discharge was without good and just cause under R.C. 3319.16." Id. at ¶20. In this context, the Court determined that the public policy underlying R.C. 4123.56 and 4123.90 required that "employees who are temporarily and totally disabled as a result of their work-related injuries have a right not only to the compensation provided in the act, but also to whatever period of absence from work is deemed medically necessary to complete their recovery or stabilize their injuries." *Coolidge* at ¶¶ 21-22, 44. Applying this conclusion to the question of termination under a neutral attendance policy, the Court held that even without a retaliatory motive, "[a]n employee who is receiving temporary total disability compensation pursuant to

R.C. 4123.56 may not be discharged solely on the basis of absenteeism or inability to work, when the absence or inability to work is directly related to an allowed condition." Id. at syllabus.

{¶8} The Court's opinion and broad holding in *Coolidge* resulted in significant confusion regarding the extent to which it created a new cause of action, expanded an existing cause of action, or was limited to the situation at-hand. Some concluded that *Coolidge* recognized a public policy exception for at-will employees terminated for absenteeism while receiving TTD benefits. See, e.g., *Klopfenstein v. NK Parts Industries, Inc.*, 171 Ohio App.3d 286, 2007-Ohio-1916. The plaintiff in *Coolidge*, however, was not employed at-will. See, generally, *Kulch v. Structural Fibers, Inc.* (1997), 78 Ohio St.3d 134, 150 (acknowledging "an exception to the employment-at-will doctrine when an at-will employee is discharged or disciplined for a reason that contravenes clear public policy."). Because *Coolidge* did not seem to recognize a new public policy exception for this reason, others concluded that its effect was to expand the scope of R.C. 4123.90 to prohibit application of a neutral attendance policy to employees who were receiving TTD benefits. See, e.g., *Brooks v. QualChoice, Inc.*, 8th Dist. No. 85692, 2005-Ohio-5136, at ¶11 ("[C]ontrary to Brooks' suggestion, *Coolidge* does not create a public policy exception for absenteeism to at-will employment situations * * * but, rather, expanded the type of action that constitutes retaliation under R.C. 4123.90 to include termination for absenteeism while on TTD."). Ms. Scalia argues that this Court should adopt the latter position.

{¶9} Two subsequent decisions of the Ohio Supreme Court, however, shed some light on the continuing effect of *Coolidge*. In *Bickers v. W. & S. Life Ins. Co.*, 116 Ohio St.3d 351, 2007-Ohio-6751, the Court considered whether *Coolidge* created a public policy exception to the employment at-will doctrine. In *Bickers*, unlike in *Coolidge*, the plaintiff was an at-will

employee who suffered an injury in the course of her employment. Id. at ¶¶3, 11. Ms. Bickers sued her employer for wrongful discharge on the authority of *Coolidge*, and the employer moved to dismiss for failure to state a claim under Civ.R. 12(B)(6). Id. at ¶¶3-5. Noting that *Coolidge* squarely addressed only the issue of whether absence from work while receiving TTD benefits was "good and just cause" under the statute under consideration, the Court explicitly limited the holding to the facts of that case. *Bickers* at ¶¶12-15, syllabus. The Court also went further, rejecting the suggestion that it should recognize a public policy exception. Id. at ¶¶23-25, syllabus.

{¶10} Thus, *Bickers* limited *Coolidge* to the facts of that case and concluded that there is no public policy exception to the employment at-will doctrine for a nonretaliatory discharge due to absenteeism during a period of TTD. See id. at ¶15. The *Bickers* Court also stated that the only remedy for alleging wrongful discharge is to be found in R.C. 4123.90, under which retaliatory discharges are proscribed. Id. at ¶23. However, because Ms. Bickers had not pled a claim for retaliatory discharge under R.C. 4123.90, *Bickers* does not squarely address the contours of a statutory retaliation claim where an employee has been terminated solely pursuant to a facially neutral attendance policy under circumstances where the absences were accrued during the period the employee was receiving TTD for a work-related injury.

{¶11} In *Sutton v. Tomco Machining, Inc.*, 129 Ohio St.3d 153, 2011-Ohio-2723, the Ohio Supreme Court recently considered a related question: whether a cause of action for wrongful discharge in violation of public policy is available to an employee who was terminated after sustaining a job-related injury, but before the employee "'filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act.'" Id. at ¶¶13-14, quoting R.C. 4123.90. In *Sutton*, the employer terminated an employee within one hour of the

employer's notification of the employee's injury. Id. at ¶2. Although the issue before the Court in *Sutton* was limited to a public policy claim and not a statutory claim under R.C. 4123.90, its analysis of the public policy underlying R.C. 4123.90 is instructive. The Court concluded that action based on a retaliatory motive was clearly in view. See *Sutton* at ¶¶12-14 ("R.C. 4123.90 * * * expressly prohibit[s] retaliation against injured workers who have filed, instituted, or pursued a workers' compensation claim."); id at ¶24 ("[W]e recognize that the General Assembly intended to proscribe retaliatory firings."). The Court also found that both the "clarity" and "jeopardy" elements of wrongful discharge in violation of public policy were satisfied. Id. at ¶¶11-28. Although the factual elements of causation and overriding justification were not before the Court, the Court elaborated on the causation element, noting the plaintiff's burden to establish that his termination "was motivated by conduct related to the public policy":

> "To establish the causation element, Sutton must prove that his discharge was retaliatory. *Because a discharge could be for reasons other than those related to workers' compensation*, such as a reasonable suspicion that the injury was not job related, a disregard by the employee for the employer's safety rules, or an immediate need for a replacement employee, *no presumption of retaliation arises from the fact that an employee is discharged soon after an injury*. Rather, the retaliatory nature of the discharge and its nexus with workers' compensation must be established by a preponderance of the evidence.

(Emphasis added.) Id. at ¶¶ 9-10.

{¶12} In *Sutton*, therefore, the Court implicitly rejected the premise that under the public policy of R.C. 4123.90, termination of an injured worker is itself an act of retaliation without need for evidence of retaliatory motivation. In this case, however, one theory underlying Ms. Scalia's statutory retaliation claim is an extension of the same idea and of the issue left unaddressed by *Bickers*: she maintains that by virtue of the fact that she was an injured worker who accrued her absences under her employer's attendance policy while receiving TTD and was terminated solely by reason of the policy, her termination was retaliatory under R.C. 4123.90. In

other words, Ms Scalia argues that such conduct is presumptively retaliatory under R.C. 4123.90. Her position is understandable, as it is apparent that allowing an employer to fire an employee under its attendance policy and for no other reason could allow an employer to retaliate against those employees who decide to pursue a worker's compensation claim and could place employees in the untenable position of choosing between pursuit of a worker's compensation claim or retaining a job, as described in *Coolidge*. Moreover, it is difficult for an employee to tease out retaliatory motive under such circumstances. We recognize that this scenario presents a "difficult policy issue, which lacks wholly satisfactory solutions[.]" *Bickers*, 2007-Ohio-6751, at ¶23. Nonetheless, our examination of *Coolidge*, *Bickers,* and *Sutton* leads this Court to conclude that the Ohio Supreme Court appears to have rejected the notion of presumptive retaliation under R.C. 4123.90 and to have left unanswered the question as to what extent an employer may consider absences attributable to TTD in application of a facially neutral attendance policy. Ms. Scalia's first and second assignments of error are, therefore, overruled to the extent that they challenge this aspect of the trial court's judgment.

Retaliation Under R.C. 4123.90

{¶13} The conclusion that we have reached with respect to Ms. Scalia's argument regarding retaliation per se should not be interpreted to say that an employee can never allege a statutory retaliation claim based action taken under an attendance policy, or that an employer's use of a facially neutral attendance policy can never be a pretext for retaliation. But in every claim under R.C. 4123.90, the employee must demonstrate a relationship between the action taken by the employer and participation in the workers' compensation system. See, e.g., *Goersmeyer v. Gen. Parts, Inc.*, 9th Dist. No. 06CA00045-M, 2006-Ohio-6674, at ¶¶10-14. In order to succeed on her retaliation claim, therefore, R.C. 4123.90 required Ms. Scalia to

demonstrate that Aldi terminated her in retaliation for instituting, pursuing, or testifying in workers' compensation proceedings.

{¶14} "Courts analyze retaliatory-discharge claims under a burden-shifting framework where the initial burden of proof is on the complainant." *Cunningham v. The Kroger Co.*, 1st Dist. No. C-050990, 2006-Ohio-5900, at ¶15. The first step under this framework requires the employee to establish a prima facie case by showing the existence of an on-the-job injury that resulted in a workers' compensation claim and a causal connection between the claim and the employee's termination. Id. See, also, *Ferguson v. SanMar Corp.*, 12th Dist. No. CA2008-11-283, 2009-Ohio-4132, at ¶¶15-17 (explaining the prima facie case for purposes of R.C. 4123.90). The prima facie case in claims under R.C. 4123.90 does not present an onerous burden for plaintiffs; it is, indeed, "easily met." (Internal citations omitted.) *Dover v. Carmeuse Natural Chems.*, 5th Dist. No. 10-CA-8, 2010-Ohio-5657, at ¶43. "[A] plaintiff is not required to present a 'smoking gun' to carry [the] burden of offering evidence adequate to create an inference that the employment decision was retaliatory." *Buehler v. AmPam Commercial Midwest*, 1st Dist. No. C-060475, 2007-Ohio-4708, at ¶24. The inference of retaliatory motive may be drawn from the surrounding circumstances, including the timing of the discharge relative to the protected conduct, whether punitive action was directed toward the employee as a result of the claim, a "hostile attitude[]" toward the employee once the claim was filed, disparate treatment of the employee relative to others, and requests not to pursue a claim. See *Ferguson* at ¶19. Once the plaintiff establishes each element of the prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for terminating the employee. *Cunningham*, 2006-Ohio-5900, at ¶15. If the employer does so, the burden shifts back to the plaintiff to demonstrate that the reason offered for the termination is a pretext for retaliation. Id.

{¶15} Under Civ.R. 56, "[s]ummary judgment will be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law." *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, at ¶10. Although our review of summary judgment is de novo, this Court has refused to consider a matter for the first time on appeal when the trial court did not "consider alternate grounds in support of a motion for summary judgment[ ]" or "failed to consider the evidence within the proper legal context." *Guappone v. Enviro–Cote, Inc.*, 9th Dist. No. 24718, 2009–Ohio–5540, at ¶12, citing *B.F. Goodrich Co. v. Commercial Union Ins.*, 9th Dist. No. 20936, 2002–Ohio–5033.

{¶16} In this case, the trial court determined that Ms. Scalia could not maintain a claim for retaliation per se under R.C. 4123.90 based on Aldi's absenteeism policy and entered summary judgment in Aldi's favor. The trial court erred because it neither fully considered the motions for summary judgment nor considered the evidence within the proper legal context – namely, with reference to the elements of a claim for statutory retaliation under R.C. 4123.90. Ms. Scalia's first and second assignments of error are, therefore, sustained on that basis.

## ASSIGNMENT OF ERROR IV

"THE TRIAL COURT ERRED IN ITS APRIL 24, 2008, ORDER BY GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM FOR WRONGFUL DISCHARGE IN VIOLATION OF THE OHIO PUBLIC POLICY EMBODIED IN OHIO REVISED CODE §§4123.90 AND 4123.56. (ASSERTED TO PRESERVE ISSUE FOR SUBSEQUENT POTENTIAL APPEAL TO OHIO SUPREME COURT.)"

{¶17} In her fourth assignment of error, Ms. Scalia argues that the trial court erred by granting summary judgment to Aldi on her claim of wrongful discharge in violation of public policy because, in her view, *Bickers* was wrongly decided. Ms. Scalia conceded this argument in

the trial court and in this court, and has assigned it as error to preserve her argument for appeal. Her fourth assignment of error is overruled. See, generally, *Bickers*, 2007-Ohio-6751.

### ASSIGNMENT OF ERROR III

"THE TRIAL COUT ERRED IN ITS AUGUST 8, 2008 ORDER BY GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT ON APPELLANT'S DISABILITY DISCRIMINATION CLAIM."

{¶18} Ms. Scalia's third assignment of error is that the trial court incorrectly granted summary judgment to Aldi on her claim of disability discrimination under R.C. 4112.02. Specifically, Ms. Scalia has argued that there is a genuine issue of material fact with respect to whether Aldi perceived her as disabled and terminated her on that basis.

{¶19} Because Ms. Scalia has argued that Aldi terminated her in violation of R.C. 4112.02, the starting point for our analysis must be the statute itself. Under R.C. 4112.02(A), it is illegal for an employer to discriminate against an employee on the basis of disability. The definition of disability, in turn, includes being regarded as having a mental or physical impairment. R.C. 4112.01(A)(13). Specifically, the statute provides:

> "'Disability' means a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment; or being regarded as having a physical or mental impairment." Id.

Under R.C. 4112.02, therefore, it is illegal to discriminate against an employee on the basis of a perceived physical or mental impairment.

{¶20} The parties agree that this Court should analyze this assignment of error in light of *Columbus Civ. Serv. Comm. v. McGlone* (1998), 82 Ohio St.3d 569, which authorized Ohio Courts to look to federal materials interpreting the Americans With Disabilities Act in conjunction with claims for disability discrimination under R.C. 4112.02. See id. at 573. In

other words, although they disagree on the outcome of the analysis, the parties agree that Ms. Scalia must demonstrate that Aldi perceived her as having a condition that substantially limited one or more of her daily life activities. We disagree with the parties' conclusion, and the trial court's analysis, on this point.

{¶21} In *McGlone*, the Ohio Supreme Court considered whether the City of Columbus discriminated against an applicant for the position of firefighter who suffered from nearsightedness. Id. at 570. The plaintiff asserted claims of discrimination both on the basis of disability and perceived disability. See id. at 574. The Court acknowledged that the version of R.C. 4112.01(A)(13) under consideration did not prohibit "regarded as" discrimination, but read that section in conjunction with corollary provisions of the Ohio Administrative Code and came to the conclusion that "regarded as" discrimination was within the ambit of prohibited conduct. Id. at 572. It did so with reference to federal caselaw interpreting the "substantially limits" language of the ADA. Id. at 573-74, quoting Section 12102(2)(A), Title 42, U.S. Code. The Court, therefore, concluded that the plaintiff had not established that he was regarded as having a disability under R.C. 4112.02 because "[t]he city * * * considered McGlone nearsighted, not handicapped, merely lacking a single physical requirement for a single job. For McGlone to succeed on a theory of perceived handicap, the city would have had to consider McGlone's nearsightedness as foreclosing him from a class of jobs." Id. at 574.

{¶22} In reliance on *McGlone*, Ohio Courts have continued to reference federal caselaw interpreting the ADA with respect to claims alleging perceived disability discrimination under R.C. 4112.02. Consequently, when the United States Supreme Court held that the ADA prohibited discrimination when "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered

entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities," *Sutton v. United Air Lines, Inc.* (1999), 527 U.S. 471, 489, Ohio Courts of appeals applied the same standard to claims for perceived disability arising under R.C. 4112.02. See, e.g., *Hershberger v. Altercare, Inc.*, 5th Dist. No. 2006CA00167, 2007-Ohio-1452, at ¶58; *Hart v. Columbus Dispatch/Dispatch Printing Co.*, 10th Dist. No. 02AP-506, 2002-Ohio-6963, at ¶30.

{¶23} We are not convinced, however, that this analysis is accurate because the federal statute and the Ohio statute at issue in those cases were inconsistent. In *Genaro v. Cent. Transport* (1999), 84 Ohio St.3d 293, the Ohio Supreme Court refined its earlier position regarding the use of federal law to interpret R.C. 4112.02. Specifically, the Court concluded that federal materials could not be used in every situation under R.C. Chapter 4112, but only when the terms of the federal statute are consistent with Ohio law or when R.C. Chapter 4112 leaves a term undefined. Id. at 298.

{¶24} While the Supreme Court's statements in *McGlone* are consistent with *Genaro* because the version of R.C. Chapter 4112 considered in *McGlone* did not define "regarded as" disability discrimination, R.C. 4112.01(A)(13) has since been amended. It now defines a disability, in part, as "a physical or mental impairment that substantially limits one or more major life activities * * * or being regarded as having a physical or mental impairment." At the time of Ms. Scalia's employment, the ADA, on the other hand, defined disability, in part, as "a physical or mental impairment that substantially limits one or more major life activities of such individual * * * [or] being regarded as having *such an impairment*." (Emphasis added.) Section

12102(2)(C), Title 42, U.S. Code.[1]   The definition of disability under the ADA was therefore similar, but with one significant difference: the inclusion of the word "such" had the effect of defining perceived disability as being regarded as having an impairment that substantially limits one or more major life activities.   See *Sutton*, 527 U.S. at 489, quoting Section 12102(2)(C), Title 42, U.S. Code. ("Under subsection (C), individuals who are 'regarded as' having a disability are disabled within the meaning of the ADA. See § 12102(2)(C).  Subsection (C) of this version of the statute provides that having a disability includes 'being regarded as having,' § 12102(2)(C), 'a physical or mental impairment that substantially limits one or more of the major life activities of such individual,' § 12102(2)(A).")   In contrast, under a plain reading of R.C. 4112.01(A)(13), a plaintiff must show that the employer regarded her as having a mental or physical impairment, but without regard to whether the employer regarded her as substantially limited in her daily life activities as a result.

{¶25} Because the plain language of the definition of disability contained in R.C. 4112.01 differs in substance from the ADA, it is not appropriate to look to federal materials interpreting the pre-2008 ADA with respect to perceived disability claims under Ohio law.  See, generally, *Genaro*, 84 Ohio St.3d at 297-98. Consequently, Ms. Scalia need not demonstrate that

---

[1] In 2008, in response, in part, to *Sutton*, the ADA was amended and the definition of "disability" now conforms with the current version of R.C. 4112.01(A)(13)'s definition of a perceived disability.  See Section 12102(1)(C), (3), Title 42, U.S. Code.  While the current version of the federal statute retains the same definition of disability, it also clarifies that for purposes of a perceived disability claim, "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this Act because of an actual or perceived physical or mental impairment *whether or not* the impairment limits or is perceived to limit a major life activity." (Emphasis added.)  Section 12102(3)(A), Title 42, U.S. Code.  Whether Ohio courts may apply federal caselaw interpreting the 2008 amendments to claims under R.C. Chapter 4112 is beyond the scope of this opinion because Ms. Scalia's employment ended before the amendments were made.  See *Medlin v. Springifeld Metro. Hous. Auth.*, 2nd Dist. no. 10-CA-15, 2010-Ohio-3654, at ¶¶5, 44 fn.5.  References to the ADA in this opinion are to the pre-2008 statute.

Aldi perceived her as being substantially limited in a major life activity, but that it perceived her as having "a physical or mental impairment[]" as defined by Ohio law. R.C. 4112.01(A)(13). To the extent that the trial court required Ms. Scalia to demonstrate that Aldi perceived her as having an impairment that substantially limited a major life activity, therefore, its decision was in error. When a trial court has not considered the evidence with respect to summary judgment in the correct legal context, as in this case, this Court has declined to consider the matter for the first time on appeal. See *Smeltzer*, 2011-Ohio-2632, at ¶15. Ms. Scalia's third assignment of error is, therefore, sustained.

### III.

{¶26} Ms. Scalia's fourth assignment of error is overruled. Her first and second assignments of error are overruled to the extent that the trial court determined that she could not maintain a claim premised upon retaliation per se under R.C. 4123.90, but are sustained to the extent that the trial court failed to completely consider her retaliation claim within the framework for analyzing such claims under the statute. Likewise, Ms. Scalia's third assignment of error is sustained because the trial court did not consider the evidence before it in the proper legal context.

{¶27} As such, the judgment of the trial court is affirmed, in part, and reversed, in part. With respect to Ms. Scalia's first, second, and third assignments of error, this case is remanded to the trial court for proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

_____
EVE V. BELFANCE
FOR THE COURT

CARR, J.
MOORE, J.
CONCUR

APPEARANCES:

RICHARD C. HABER, Attorney at Law, for Appellant.

MICHAEL J. SPISAK and BONNIE S. FINLEY, Attorneys at Law, for Appellee.