[Cite as *Harris v. OHNH EMP, L.L.C.*, 2015-Ohio-3212.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

GERALD A. HARRIS

    Appellant

    v.

OHNH EMP, LLC dba WYANT WOODS
CARE CENTER

    Appellee

C.A. No.     27455

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2012-10-5831

DECISION AND JOURNAL ENTRY

Dated: August 12, 2015

MOORE, Judge.

{¶1}    Plaintiff-Appellant Gerald Harris appeals from the decision of the Summit County Court of Common Pleas granting summary judgment to Defendant-Appellee OHNH EMP, LLC dba Wyant Woods Care Center ("Wyant Woods") on Mr. Harris' complaint. We affirm in part and reverse in part.

I.

{¶2}    Wyant Woods is a skilled nursing and Alzheimer's special care facility. Mr. Harris began working there in December 2011, as the Laundry/Housekeeping Supervisor. This was a non-union position. Mr. Harris was paid a salary of $1,760.00 on a biweekly basis, which amounted to $22.00 per hour based on a 40-hour work week. While Mr. Harris often worked 45 to 60 hours a week, he was not paid overtime, as his position was labeled as exempt.

{¶3}    Mr. Harris was in charge of both the laundry and housekeeping divisions of Wyant Woods, however, he also was a "working supervisor[,]" meaning that he sometimes was

required to help with the manual labor within the departments he managed. The parties dispute how much of Mr. Harris' employment was devoted to manual labor.

{¶4} When he began his employment with Wyant Woods, the cleanliness of the facility was an ongoing issue of concern. Mr. Harris acknowledged that cleanliness issues continued throughout the course of his employment. Judy Dennis, the administrator and executive director of the facility, indicated that it was a goal of the facility to have the floors stripped and refinished over the course of 6 to 8 months. Mr. Harris maintained that there were not enough floor technicians to complete the project.

{¶5} Even though there were still issues with the cleanliness of the facility, Mr. Harris' 90-day performance evaluation was positive. Ms. Dennis indicated that "[Mr. Harris] took a very challenging job and has done * * * [w]ell with supervising his staff and making accountability." Additionally, the evaluation recommended Mr. Harris' continued employment.

{¶6} On April 4, 2012, Mr. Harris slipped and fell while assisting another employee with stripping the floor. He sustained injuries to his back, neck, and wrist and filed a workers' compensation claim as a result. Mr. Harris was off work on total disability from April 5, 2012 to April 6, 2012. When he returned to work he did so with restrictions. Specifically, Mr. Harris was not supposed to kneel, squat, use ladders, engage in repetitive motions, or lift items over 20 pounds. Mr. Harris believed he was permitted to run the floor machines, fold clothes, mop floors, empty the trash, vacuum, monitor employees, make his rounds, and do paperwork. He indicated he was restricted from doing "heavy work." When Debra Snyder, the Human Resources Manager, found out that Mr. Harris was running the floor machine following his accident, she developed a list of transitional duties that he could do under his work restrictions;

using the floor machine was not included. Mr. Harris signed the paperwork on May 25, 2012, detailing the transitional duties he could perform.

{¶7} On June 8, 2012, Mr. Harris was called into Ms. Snyder's office. Also present was Judy Dennis, the administrator of Wyant Woods and Mr. Harris' direct supervisor. Ms. Dennis told Mr. Harris that her supervisor was not happy with the progress being made on the cleanliness of the building and told him that Wyant Woods had to let him go.

{¶8} Mr. Harris filed a three-count complaint in October 2012 against Wyant Woods alleging that it retaliated against him for pursing a workers' compensation claim in violation of R.C. 4123.90, that it had violated R.C. 4111.03 by failing to pay him overtime, and that it had violated R.C. 4111.13 by retaliating against him for making a complaint about its failure to pay him overtime.

{¶9} Wyant Woods filed a motion for summary judgment asserting that it was entitled to judgment as a matter of law because Mr. Harris was terminated for performance reasons, that he had not complained that he had not been paid overtime, and that he was an exempt employee not entitled to be paid overtime. Mr. Harris opposed the motion. The trial court ruled in favor of Wyant Woods concluding that, while Mr. Harris had established a prima facie case of workers' compensation retaliation, Wyant Woods set forth a legitimate non-retaliatory reason for discharge, and Mr. Harris had failed to demonstrate that Wyant Woods' legitimate reason was pretextual. With respect to overtime compensation, the trial court found that Mr. Harris was an exempt employee not entitled to overtime. In so finding, the trial court concluded that Mr. Harris' claim of retaliatory discharge for complaining about Wyant Woods' failure to pay overtime was moot.

{¶10} Mr. Harris has appealed, raising three assignments of error for our review.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF WYANT WOODS ON [MR.] HARRIS' CLAIM FOR WORKER[S'] COMPENSATION RETALIATION IN VIOLATION OF R.C. [] 4123.90 BECAUSE A QUESTION OF FACT REMAINS AS TO WHETHER WYANT WOODS' PROFFERED BUSINESS REASON FOR [MR.] HARRIS' TERMINATION WAS PRETEXT TO HIS WORKER[S'] COMPENSATION CLAIM AND HIS WORK RELATED INJURY.

{¶11} Mr. Harris asserts in his first assignment of error that the trial court erred in granting summary judgment to Wyant Woods on his claim for workers' compensation retaliation in violation of R.C. 4123.90. Specifically, Mr. Harris argues that a dispute of fact remains with respect to whether Wyant Woods' proffered reason for terminating him was a pretext. Wyant Woods maintains that Mr. Harris failed to establish a prima facie case of R.C. 4123.90 violation, and, even if he did, there is no dispute of fact that he was terminated for legitimate business reasons.

{¶12} In reviewing a trial court's ruling on a motion for summary judgment, this Court applies the same standard as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983). Pursuant to Civ.R. 56(C), summary judgment is proper if:

> (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). The moving party bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record

that show the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-93 (1996). Once this burden is satisfied, the non-moving party bears the burden of offering specific facts to show a genuine issue for trial. *Id.* at 293; Civ.R. 56(E).

{¶13} R.C. 4123.90 provides in relevant part that, "[n]o employer shall discharge, demote, reassign, or take any punitive action against any employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer."

{¶14} "Courts analyze retaliatory-discharge claims under a burden-shifting framework, requiring the employee to initially set forth a prima facie case by showing the existence of an on-the-job injury that resulted in a workers' compensation claim and a causal connection between the claim and the employee's termination." *Rivers v. Cashland,* 9th Dist. Summit No. 26373, 2013-Ohio-1225, ¶ 13, citing *Scalia v. Aldi, Inc.,* 9th Dist. Summit No. 25436, 2011-Ohio-6596, ¶ 14. A plaintiff can only prevail on his or her claim under R.C. 4123.90 if he or she alleges and proves that he or she was fired not because of his or her job-related injuries, but because of his or her pursuit of workers' compensation benefits. *Doss v. Hilltop Rental Co.,* 1st Dist. Hamilton No. C-030129, 2003-Ohio-5259, ¶ 34; *see also White v. Mt. Carmel Med. Ctr.,* 150 Ohio App.3d 316, 2002-Ohio-6446, ¶ 36 (10th Dist.) ("R.C. 4123.90 does not prevent an employer from discharging an employee who is unable to perform his or her duties. Employees who have filed for workers' compensation benefits may be discharged for just and lawful reasons. The statute protects only against termination in direct response to the filing or pursuit of a workers' compensation claim.") (Internal quotations and citation omitted.). "The prima facie case in claims under R.C. 4123.90 does not present an onerous burden for plaintiffs; it is, indeed, easily

met." (Internal quotations omitted.) *Scalia* at ¶ 14. "The inference of retaliatory motive may be drawn from the surrounding circumstances, including the timing of the discharge relative to the protected conduct, whether punitive action was directed toward the employee as a result of the claim, a hostile attitude[ ] toward the employee once the claim was filed, disparate treatment of the employee relative to others, and requests not to pursue a claim." (Internal quotations omitted.) *Id.* "Once the plaintiff establishes each element of the prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for terminating the employee." *Rivers* at ¶ 13, quoting *Scalia* at ¶ 14. "If the employer does so, the burden shifts back to the plaintiff to demonstrate that the reason offered for the termination is a pretext for retaliation." *Rivers* at ¶ 13, quoting *Scalia* at ¶ 14.

{¶15} To create a question of fact with respect to pretext, the plaintiff must demonstrate that the defendant's proffered reason for firing the plaintiff "(1) had no basis in fact, (2) did not actually motivate [the] discharge, or (3) was insufficient to motivate [the] discharge." *King v. Jewish Home,* 178 Ohio App.3d 387, 2008-Ohio-4724, ¶ 9 (1st Dist.); *see also Thompson v. Merriman CCRC, Inc.,* 9th Dist. Summit No. 23229, 2006-Ohio-6008, ¶ 23 (applying the foregoing in the context of a R.C. 3721.24 action); *Dukes v. Associated Materials, L.L.C.,* 9th Dist. Summit No. 27091, 2014-Ohio-4322, ¶ 21 (applying the foregoing in the context of a R.C. 4112.02 action).

> The first type of showing consists of evidence that the proffered bases for the plaintiff's discharge never happened and are thus factually false. The third showing ordinarily consists of evidence that other employees not in the protected class were not fired although they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff. These two types of rebuttals are direct attacks on the credibility of the employer's proffered motivation for firing [the] plaintiff and, if shown, provide an evidentiary basis for what the Supreme Court has termed a suspicion of mendacity. In the second type of rebuttal, the plaintiff admits that such conduct could motivate dismissal. Thus, the plaintiff indirectly attacks the credibility of the proffered

explanation by showing, through the sheer weight of circumstantial evidence, that an illegal motivation was more likely than the explanation offered by the defendant.

*Thompson* at ¶ 23.

{¶16} "Factors taken into consideration include such punitive action as bad performance reports surfacing immediately after a workers' compensation claim was filed, the length of time between the filing of a claim and discharge, changes in salary level, hostile attitudes emerging, and whether legitimate reasons exist for the discharge." (Quotations and citations omitted.) *Herron v. DTJ Ents., Inc.,* 9th Dist. Summit No. 22796, 2006-Ohio-1040, ¶ 19.

{¶17} The trial court concluded that Mr. Harris had established a prima facie case of workers' compensation retaliation, that Wyant Woods had articulated a legitimate non-discriminatory reason for terminating Mr. Harris, but that Mr. Harris had failed to establish the existence of a genuine issue of material fact with respect to whether Wyant Woods' reason was actually a pretext. Wyant Woods contests that Mr. Harris met his prima facie case and maintains that its basis for terminating Mr. Harris was not a pretext. It does not appear that Mr. Harris challenges on appeal the trial court's finding that Wyant Woods set forth a legitimate non-discriminatory reason for terminating him.

{¶18} The parties do not appear to dispute that Mr. Harris provided evidence that he suffered an on-the-job injury that resulted in the filing of a workers' compensation claim on or about April 4, 2012. Instead, Wyant Woods disputes the existence of a causal connection between Mr. Harris' filing of a workers' compensation claim and his termination and whether Mr. Harris can establish that Wyant Woods' articulated reason for terminating Mr. Harris, i.e. poor performance and failure to meet deadlines, was a pretext.

{¶19} A little over two months passed between the filing of Mr. Harris' workers' compensation claim and his termination. Such temporal proximity is not sufficiently close in and of itself to establish causation. *See Mangino v. W. Res. Fin. Corp.,* 9th Dist. Wayne No. 11-CA-0050, 2012-Ohio-3874, ¶ 19-20. It is true that Mr. Harris was terminated shortly after he was given his transitional work duties on May 25, 2012, and that that paperwork limited what Mr. Harris could do with respect to manual labor. Mr. Harris maintains that his termination close in time to the issuance of that document evidences causation. We are not convinced. While the temporal proximity might lead to an inference that Wyant Woods terminated Mr. Harris for being unable to perform manual labor, such as running the floor machines, we fail to see how it leads to an inference that Mr. Harris was terminated for filing a workers' compensation claim. *See Doss*, 2003-Ohio-5259, at ¶ 34.

{¶20} Thus, Mr. Harris was required to present additional evidence to establish a causal connection. *See Mangino* at ¶ 19-20. Mr. Harris presented evidence that Wyant Woods failed to follow its progressive disciplinary policy guidelines in terminating him. Further, Mr. Harris presented evidence that he received negative reviews and criticism following his accident, that he had not received prior to his accident. He testified during his deposition that, prior to his accident, he did not receive any complaints about the quality of his work. While he acknowledged that the cleanliness of the facility was an issue before he started and continued to be an issue during his employment, he stated that he "was making progress, considerable progress[.]" He "was getting accolades from the administrator and all the employees on how good the building looked, it never looked that good in years." As noted above, Mr. Harris received a very positive 90-day review at the end of February 2012 that acknowledged that Mr. Harris took on a challenging job, indicated he was meeting expectations, and recommended his

continued employment. According to Mr. Harris, it was only after his injury that he began receiving complaints from about his performance. In April 2012, after his injury, Denver Fawcett, the Regional Facilities Manager who conducted an annual mock survey and quarterly audits at Wyant Woods, began to complain to Mr. Harris that he was not working fast enough. Additionally, Ms. Dennis issued some memos in April 2012 after Mr. Harris' injury that pointed out areas that he needed to provide reminders and training to his staff. While Ms. Dennis indicated that she did not believe these memos were disciplinary in nature, she did see them as "performance review[s], [] because [they were] saying you're not following what you need to do." Further, Ms. Dennis' notes from May 2012 indicated that Mr. Harris had not completed certain projects on time and that the date to complete the project was being extended until June 12, 2012. Finally, on June 7, 2012, Mr. Harris' departments received negative reviews in several areas during an audit.

{¶21} The trial court acknowledged the foregoing negative reviews and performance evaluations of Mr. Harris, but improperly found that he was receiving similar negative feedback throughout the course of his employment. While there were negative comments concerning Mr. Harris' departments on the January 2012 mock survey, and there were additional joint memos issued by Ms. Dennis and Mr. Harris in early February 3, 2012 about areas of concern, the trial court failed to acknowledge that Mr. Harris' 90-day evaluation at the end of February 2012, was overwhelmingly positive. It is true that Ms. Snyder averred in her affidavit that management personnel had "addressed with Mr. Harris their concerns about his work performance throughout his employment[,]" and Ms. Dennis averred that she "continually" brought performance related issues to Mr. Harris' attention. Nonetheless, Mr. Harris denied the same during his deposition. He maintained that no one expressed any concerns to him about his performance until after his

injury. Neither the trial court nor Wyant Woods has pointed to any documents or specific incidents related to Mr. Harris' performance that occurred between the positive February 2012 review and his injury in April 2012. Accordingly, if the evidence is viewed in a light most favorable to Mr. Harris, there does appear to be evidence that the amount of negative feedback Mr. Harris received, at the very least, increased following his injury and filing of his workers' compensation claim.

{¶22} Additionally, Mr. Harris submitted his own affidavit averring that on April 19, 2012, a physician ordered that Mr. Harris undergo an MRI; however, Wyant Woods opposed that order. Mr. Harris also testified that he was absent from work June 7, 2012, the day before his termination, receiving treatment for muscle spasms related to his injury. Finally, Mr. Harris indicated that it was approximately a week before his termination that he retained an attorney to represent him. Thus, there was also some evidence from which one could infer a connection between Mr. Harris' pursuit of workers' compensation benefits and his termination.

{¶23} Finally, there was evidence that another similarly situated employee, Ray Cooper, the maintenance supervisor, received disparate treatment. There was evidence that, prior to Mr. Harris working at Wyant Woods, the position of laundry/housekeeping supervisor and maintenance supervisor was combined into a single position. When Mr. Harris started, that changed, and Mr. Harris was hired as the laundry/housekeeping supervisor and Mr. Cooper was hired as the maintenance supervisor. There was evidence that both Ms. Dennis and Mr. Harris considered Mr. Cooper's position to be equal to that of Mr. Harris. Ms. Dennis testified that Mr. Cooper had not suffered a workplace injury and thus, had not filed for workers' compensation. Additionally, Ms. Dennis acknowledged that Mr. Cooper had not met all his deadlines, and some

of these failures may have prevented Mr. Harris from completing some of his projects. Ms. Dennis also agreed that, despite the foregoing, Mr. Cooper was not terminated.

{¶24} Wyant Woods argues that Mr. Cooper was not similarly situated to Mr. Harris because Mr. Harris failed to prove the absence of mitigating or differentiating circumstances surrounding their respective work performance. *See Jones v. MTD Consumer Group, Inc.*, 9th Dist. Medina No. 13CA0093-M, 2015-Ohio-1878, ¶ 29 (discussing what is required to be similarly situated in the context of a reverse discrimination case). Even assuming this to be true, we are mindful that this matter is only at the stage of summary judgment, and the issue before us is whether there remains a genuine issue of material fact. Given the statements in the record discussing Mr. Cooper as being equal to Mr. Harris, and in light of the other evidence of a causal connection, we cannot say that Wyant Woods' argument is dispositive of the issue. The trial court did not err in concluding that Mr. Harris established a prima facie case.

{¶25} As Mr. Harris has not challenged on appeal the trial court's finding that Wyant Woods set forth a legitimate business reason for terminating Mr. Harris, we will forego detailing the evidence of Mr. Harris' poor performance or failure to meet deadlines. Instead, the remainder of our focus will center on whether there remains a genuine issue of material fact as to whether Wyant Woods' stated reason for terminating Mr. Harris was a mere pretext.

{¶26} Much of the evidence we have discussed above also supports the conclusion that there remains an issue of fact with respect to whether Wyant Woods actually terminated Mr. Harris for poor work performance. Viewed in a light most favorable to Mr. Harris there are several things that trouble this Court about Wyant Woods' claim, and the trial court's conclusion, that Wyant Woods terminated Mr. Harris for poor work performance and the failure to meet deadlines. Wyant Woods maintains that Mr. Harris had a history of unsatisfactory performance

throughout his employment; yet, there is nothing in the record documenting any other discipline of Mr. Harris. Moreover, the spaces on his termination sheet to list prior discipline were left blank, despite the fact that Ms. Dennis claimed that she and others had provided Mr. Harris with coaching on multiple occasions and at least one verbal warning. The termination form specifically indicated that verbal discipline should be noted. And while it is true, as the trial court pointed out, that the January 2012 mock survey did point to issues in Mr. Harris' departments, it is difficult to infer that those problems would have been unresolved when Mr. Harris' subsequent 90-day evaluation was extremely positive. We note that the trial court, in its discussion concerning pretext, failed to acknowledge Mr. Harris' positive 90-day evaluation and consider how that could effect the analysis of the issue. There was evidence that the feedback about Mr. Harris' performance became increasingly negative only after his injury, that Wyant Woods refused to approve an MRI for Mr. Harris, and that Mr. Harris was terminated the day after he was absent due to receiving treatment for his injury and shortly after retaining an attorney. As noted above, neither the trial court nor Wyant Woods has pointed to any documents or specific incidents related to Mr. Harris' performance that occurred between the positive February 2012 review and his injury in April 2012. Additionally, there was evidence that Mr. Cooper, who was a supervisor like Mr. Harris but did not suffer a workplace injury, failed to meet deadlines and was nonetheless not terminated. Given all of the evidence, and this Court's duty to view it in a light most favorable to Mr. Harris, we conclude an issue of fact remains with respect to whether Wyant Woods' stated reason for terminating Mr. Harris was a pretext.

{¶27} Mr. Harris' first assignment of error is sustained.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN
FAVOR OF WYANT WOODS ON [MR.] HARRIS' CLAIM FOR OVERTIME

COMPENSATION PURSUANT TO OHIO R.C. [] 4111.03 BECAUSE BASED ON THE EVIDENCE IN THE RECORD, THERE IS A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER [MR.] HARRIS WAS AN EXEMPT EMPLOYEE.

**{¶28}** Mr. Harris asserts in his second assignment of error that the trial court erred in granting summary judgment to Wyant Woods on his claim for a violation of R.C. 4111.03 because an issue of fact remains with respect to whether he was an exempt employee. We do not agree.

**{¶29}** R.C. 4111.03(A) provides that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek, in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the 'Fair Labor Standards Act of 1938,' 52 Stat. 1060, 29 U.S.C.A. 207, 213, as amended." "It is well settled that exemptions from the Fair Labor Standards Act are to be narrowly construed." *Weisfeld v. PASCO, Inc.,* 9th Dist. Summit No. 26416, 2013-Ohio-1528, ¶ 22, quoting *Mitchell v. Kentucky Finance Co.,* 359 U.S. 290, 295 (1959).

**{¶30}** 29 U.S.C. 213 provides that the overtime compensation provided for in 29 U.S.C. 207 does not have to be provided to certain exempt employees, including "any employee employed in a bona fide executive, administrative, or professional capacity * * *." 29 U.S.C. 213(a)(1). Additionally, R.C. 4111.03(D)(3)(d) states that the term "employee" does not include an individual "employed in a bona fide executive, administrative or professional capacity * * * ."

**{¶31}** The trial court concluded that there was no genuine dispute of material fact that Mr. Harris was an exempt employee because he was employed in an executive and administrative capacity. As we agree that Mr. Harris was employed in an executive capacity,

and was therefore an exempt employee, we see no reason to examine whether he also met the criteria for being employed in an administrative capacity.

{¶32} The Code of Federal regulations provides that, an "employee employed in a bona fide executive capacity" is an employee who is

(1) Compensated on a salary basis at a rate of not less than $455 per week (or $380 per week, if employed in American Samoa by employers other than the Federal Government), exclusive of board, lodging or other facilities;

(2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

(3) Who customarily and regularly directs the work of two or more other employees; and

(4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. 541.100(a).

{¶33} The parties dispute whether Mr. Harris' primary duty was management. *See* 29 C.F.R. 541.100(a)(2). Accordingly, we will limit our focus to the law and evidence related to that area.

Generally, "management" includes, but is not limited to, activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. 541.102.

**{¶34}** 29 C.F.R. 541.106 notes that "[c]oncurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption if the requirements of [] 541.100 are otherwise met." "Whether an employee meets the requirements of [] 541.100 when the employee performs concurrent duties is determined on a case-by-case basis and based on the factors set forth in [] 541.700." *Id.* 29 C.F.R. 541.700(a) states that, "[t]he term 'primary duty' means the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." Factors considered in determining what the primary duty of the employee is include, "the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." *Id.* The Sixth Circuit has noted that "courts cannot rely upon the plaintiff's or the employer's description of the plaintiff's position or authority; instead we must look at the plaintiff's actual duties to determine whether she qualifies for the executive exemption." (Emphasis omitted.) (Internal quotations and citation omitted.) *Thomas v. Speedway SuperAmerica, LLC,* 506 F.3d 496, 503 (6th Cir.2007). And while Wyant Woods has the burden of establishing every element of the executive exemption test set forth in 29 C.F.R. 541.100(a), the burden applies to every element, "not every factor under every element." *Id.* at 505, fn. 6. "At issue in this case is the primary duty element and [Wyant Woods] needs to carry its burden only on the primary-duty element as a whole, not on each individual factor relevant to that inquiry." *Id.*

**{¶35}** While the percentage of time performing exempt work can "be a useful guide" in determining whether exempt work is the primary duty, "[t]ime alone, however, is not the sole test * * *." 29 C.F.R. 541.700(b). "Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion." *Id.*

> Thus, for example, assistant managers in a retail establishment who perform exempt executive work such as supervising and directing the work of other employees, ordering merchandise, managing the budget and authorizing payment of bills may have management as their primary duty even if the assistant managers spend more than 50 percent of the time performing nonexempt work such as running the cash register. However, if such assistant managers are closely supervised and earn little more than the nonexempt employees, the assistant managers generally would not satisfy the primary duty requirement.

29 C.F.R. 541.700(c).

**{¶36}** Based upon the record before us, there is no dispute of fact that at least some of Mr. Harris' duties were managerial as that term is defined in 29 C.F.R. 541.102.

**{¶37}** When Mr. Harris came in each day, he first made sure everyone who was scheduled to be at work was present. If someone was not there, he would call and try to get someone else to fill in, and if he did not succeed in doing so, he would fill in for that person. Mr. Harris was also responsible for keeping track of the attendance of his employees and documenting it in the employees' personnel files as well as scheduling the employees in his department. While employees would go to Ms. Snyder to find out how much time they had available to take off from work, Mr. Harris would approve the application for his employees to take time off.

**{¶38}** Mr. Harris was additionally responsible for disciplining his employees for various reasons. He also made rounds at the facility to make sure that his employees were doing the work that they were assigned and to check on the condition of the rooms and common areas. He

was responsible for ordering supplies and deciding what to order based upon what was needed. On occasion, Mr. Harris addressed problems his employees were having that they brought to his attention. He also conducted in-services with his staff about various topics related to laundry and housekeeping. If the equipment broke down, the employee would report it to him and he would contact the vendor to get a replacement. Finally, Mr. Harris was responsible for conducting periodic evaluations of his staff and going over the reviews with them.

{¶39} While Mr. Harris also performed non-managerial tasks, including assisting with cleaning the facility, the above discussed tasks have managerial components. *See* 29 C.F.R. 541.102. Mr. Harris acknowledged during his deposition that he performed the tasks discussed above.

{¶40} Mr. Harris asserts on appeal that 75 percent of his time was devoted to non-managerial tasks.[1] For purposes of summary judgment, we will accept Mr. Harris' claim as being true. While time is certainly a factor to take into account in determining whether Mr. Harris' primary duty was in the realm of management, it is not dispositive. *See* 29 C.F.R. 541.700(b). Instead, we consider several factors: "the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." 29 C.F.R. 541.700(a).

---

[1] Mr. Harris in his deposition claimed that up to 90 percent of his work was manual, non-managerial work; however, on appeal, it appears he has abandoned that assertion as he solely argued that 75 percent of his work was devoted to non-managerial work. We note that Mr. Harris also argued in his motion in opposition to summary judgment below that 75 percent of his work was non-exempt; it appears that figure was also relied upon by the trial court.

{¶41} Mr. Harris argues that the managerial tasks he performed were "lacking 'in relative importance[,]'" because the floor technicians in his department "did not require supervision to perform their work responsibilities." In considering this first factor, "courts must compare the importance of the plaintiff's managerial duties with the importance of h[is] non-managerial duties, keeping in mind the end goal of achieving the overall success of the company." *See Thomas*, 506 F.3d at 505. Thus, the question is not whether Mr. Harris' already trained employees could do their job without supervision; the question is whether Mr. Harris' managerial tasks are more important to Wyant Woods than the performance of his non-exempt tasks involving cleaning the facility. *See id.* As noted above, Mr. Harris was responsible for scheduling his employees, monitoring their attendance, ordering supplies, addressing broken equipment, granting time off, disciplining his employees, providing in-services to aid in their training, and evaluating their performances. If Mr. Harris failed to perform these managerial duties it would be unlikely that the departments could function. *See id.* ("If Thomas failed to perform her nonmanagerial duties, her Speedway station would still function, albeit much less effectively. After all, most of us—even if unwillingly—have visited and spent our money at filthy gas stations with sparsely stocked shelves. If, however, Thomas failed to perform her managerial duties, her Speedway station would not function at all because no one else would perform these essential tasks. Surely, a gas station cannot operate if it has not hired any employees, has not scheduled any employees to work, or has not trained its employees on rudimentary procedures such as operating the register."). Thus, this factor weighs in favor of Mr. Harris being considered an exempt employee.

{¶42} With respect to the third factor, "the employee's relative freedom from direct supervision[,]" the evidence also supports the conclusion that Mr. Harris' primary duties were

managerial. *See* 29 C.F.R. 541.700(a). While Mr. Harris broadly averred that he "had little discretion to make decisions" and "received direction for conducting [his] daily work responsibilities from [Ms. Dennis] on a daily basis[,]" his statements are conclusory in nature and belied by his deposition testimony. During his deposition, with respect to the time period between his injury and termination, Mr. Harris stated that he did not talk to Ms. Dennis often. He also indicated that he did not have a set work schedule, and that while he had to work at least eight hours a day, Monday through Friday, he chose when to come in each day and when to leave. He based that decisions on "what was going on that day[.]" In addition, he was responsible for deciding when to do rounds of the facility. Mr. Harris did not need permission to discipline any of his staff or to order supplies. Mr. Harris was responsible for running the in-services and did not remember his supervisor ever attending the in-services. Finally, Mr. Harris was solely responsible for deciding what rating to give his staff on their evaluations.

**{¶43}** While Mr. Harris asserts that he had no authority to hire personnel and was instructed how to handle a specific employee if she was not cleared to return to work, courts have concluded that "[a] plaintiff need not be absolutely free from supervision in order for a defendant to demonstrate that she was relatively free from supervision." *Wachenschwanz v. Dolgencorp, LLC,* S.D.Ohio No. 2:12-CV-1037, 2014 WL 907249, *10 (Mar. 7, 2014), citing *Thomas,* 506 F.3d at 507. Given Mr. Harris' admissions in his deposition concerning the tasks in which he could engage without permission or supervision, we conclude that this factor weighs in favor of him being an exempt employee.

**{¶44}** With respect to the fourth factor, "the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee[,]" *see* 29 C.F.R. 541.700(a), we note that there is little evidence or argument in the

record. From the record it is clear that Mr. Harris' salary was $1760, paid on a biweekly basis. Wyant Woods has not pointed to any evidence in the record detailing the pay of non-exempt employees. The record evidences that Mr. Harris was a non-union employee, while all his staff were union employees and that, because of that, Mr. Harris was subject to a different employee handbook than the union employees. Additionally, Mr. Harris received reimbursement for some of his cell phone expenses, whereas the union employees did not. This evidence certainly is not overwhelming, particularly in the absence of salary information on Mr. Harris' employees. Accordingly, we are unable to evaluate which side this factor would favor.

{¶45} Considering all the evidence and the factors in a light most favorable to Mr. Harris, we conclude that a trier of fact could only conclude that Mr. Harris' primary duty was managerial. Mr. Harris engaged in numerous exempt tasks that were vital to Wyant Woods' success as a company and he was relatively free from direct supervision. While Mr. Harris may have spent more time performing non-exempt tasks, we nonetheless conclude the evidence only supports that his primary duty was the performance of exempt tasks.

{¶46} As this is the only element of the executive exemption test being challenged on appeal, we conclude the trial court did not err in granting summary judgment to Wyant Woods on Mr. Harris' claim for overtime compensation as he was employed in an executive capacity. Mr. Harris' second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF WYANT WOODS ON [MR.] HARRIS' CLAIM THAT WYANT WOODS VIOLATED OHIO R.C. [] 4111.13 BECAUSE THIS CLAIM IS NOT MOOT AND THE RECORD DEMONSTRATES A GENUINE ISSUE OF MATERIAL FACT AS [TO] WHETHER WYANT WOODS TERMINATED [MR.] HARRIS IN RETALIATION FOR HIS COMPLAINT ABOUT NOT RECEIVING OVERTIME COMPENSATION.

**{¶47}** Mr. Harris asserts in his third assignment of error that the trial court erred in granting summary judgment on his claim alleging a violation of R.C. 4111.13 because it was not moot and because there remained a genuine issue of material fact. Because we agree that the trial court erred in finding this claim moot, we conclude the trial court erred in granting summary judgment on that basis.

**{¶48}** R.C. 4111.13(B) states that

[n]o employer shall discharge or in any other manner discriminate against any employee because the employee has made any complaint to the employee's employer, or to the director, that the employee has not been paid wages in accordance with sections 4111.01 to 4111.17 of the Revised Code, or because the employee has made any complaint or is about to cause to be instituted any proceeding under or related to those sections, or because the employee has testified or is about to testify in any proceeding.

**{¶49}** The trial court determined the claim was moot because "[Mr. Harris] was properly classified as an exempt employee under Ohio wage and hour law[; and therefore,] no retaliation claim exists." Thus, essentially the trial court found that, because Mr. Harris was not entitled to overtime compensation, he had no claim under R.C. 4111.13(B). Assuming without deciding that a civil cause of action exists under the statute, *see* R.C. 4111.99(B) (authorizing *criminal* penalties for a violation), we see no requirement in the statute that a plaintiff must first be entitled to overtime compensation in order for the plaintiff to recover if his or her employer terminates him or her for complaining about not receiving overtime compensation. While it may be unlikely that Wyant Woods would have discharged Mr. Harris for *complaining about* something he was not entitled to receive, it is not outside the realm of possibility. Accordingly, we cannot say that this claim is moot.

**{¶50}** As the trial court did not pass on any of the issues raised by the parties in their motion practice, this Court, as a reviewing court, is not inclined to do so in the first instance. *See*

*Wooster v. Enviro-Tank Clean, Inc.,* 9th Dist. Wayne No. 13CA0012, 2015-Ohio-1876, ¶ 15. Upon remand, the trial court is instructed to consider the issues raised by the parties. To the extent Mr. Harris has argued that the trial court erred in finding his claim for a violation of R.C. 4111.13 moot, we agree. Mr. Harris' third assignment of error is sustained to that extent.

### III.

**{¶51}** We sustain Mr. Harris' first assignment of error, overrule his second assignment of error, and sustain his third assignment of error to the extent he asserts his claim was not moot. The matter is remanded to the Summit County Court of Common Pleas for proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

————————————————————
CARLA MOORE
FOR THE COURT

HENSAL, P. J.
WHITMORE, J.
CONCUR.

APPEARANCES:

JEROME T. LINNEN, Attorney at Law, for Appellant.

BRIAN J. KELLY, Attorney at Law, for Appellee.